No. 38,135

THE STATE OF KANSAS, ex rel. J. D. CONDERMAN, County Attorney of
Allen County, Kansas, *Petitioner*, v. IVAN R. JONES, *Respondent.*

(219 P. 2d 706)

Opinion filed June 24, 1950.

*J. D. Conderman,* county attorney, Iola, argued the cause, and was on the
briefs for the plaintiff.

*Frederick G. Apt,* of Iola, argued the cause, and *Howard M. Immel,* of Iola,
was with him on the briefs for the respondent.

The opinion of the court was delivered by

SMITH, J.: This is an original action in quo warranto brought by
the county attorney of Allen county in the name of the state to test
the right of respondent to hold the office of mayor of Iola.

Issues were joined by the filing of a petition and answer. By
stipulation depositions were taken by both parties. The cause has
been submitted on that record.

Iola is a city of the second class. G. S. 1935, 14-1301, provides, in part, as follows:

"The mayor and each of said commissioners shall be not less than twenty-five years of age, a citizen of the United States, and for two years immediately preceding his election a resident of such city."

The state contends Jones does not meet the above requirement as to residence. Jones contends he does.

The petition alleged the candidacy of Jones; that he received the most votes at the election held on April 4, 1950; that he was given a certificate of election and took the oath. The petition then alleged that Jones had been in business in Iola since 1937; that on April 14, 1947, he and his wife purchased and moved to a suburban tract outside the city limits, and since that time had not lived in Iola, and until July, 1949, had no dwelling house or other abode in Iola, and from April, 1947, to July, 1949, lived on the suburban tract; that in July, 1949, Jones sold the suburban tract and moved back to Iola, where they maintained their home at the time the petition was filed. The petition then alleged that in 1948 and 1949 the couple listed their household goods and personal property for taxation in Iola township outside the city; that at the same time their post office address was Rural Route No. 2, Iola, and their address was so listed in the telephone directory; that Jones gave the same address when he obtained his automobile license; that he was enumerated by the assessor of Iola township and signed such return. The petition then alleged that at the general election for 1948 Jones voted in Iola precinct; that this was the township surrounding the city of Iola and neither Jones nor his wife registered for voting in the city of Iola at that election. The petition then alleged that by reason of the foregoing allegations, Jones was not a resident of Iola for the two years preceding the election on April 4, 1950, and was not qualified under G. S. 1935, 14-1301; that one Thomas O. Waugh was elected mayor in 1947 for a term of three years, had qualified and served as mayor and was mayor until some person qualified had been elected. Judgment was asked that defendant Jones be excluded from exercising the powers of the office of mayor.

The answer was first a general denial and a specific denial of a certain number of paragraphs. Jones then alleged that he moved to Iola on September 10, 1937, with the intention of establishing himself as a resident thereof and he did establish a residence in Iola; that in 1941 he entered the employ of the Kelley Hotel, acquired an

interest in it and continued to hold it until July 1, 1946, when he sold his interest; that on January 1, 1943, he was appointed terminal manager for three bus lines and continuously served in that capacity; that he had been continuously engaged in business in Iola from 1937 until the time of filing the answer; that in January, 1947, he as an investment purchased a house located upon a suburban tract adjacent to the city of Iola; that it was purchased for resale; that he on March 19, 1947, because of his inability to hire laborers to repair this suburban house moved from his residence at 826 E. Madison Avenue, Iola, Kan., to that property, taking with him only such household goods, clothing and personal effects as were required to meet the minimum requirements of his family and all his other household goods were stored in Iola at 322 South Washington Street; that he established living quarters at that address and maintained them from March, 1947, until July, 1949; that these quarters were occupied by him on various occasions and it was always referred to by him as his home; that this residence was considered by respondent to be his home while he managed the Kelley Hotel and also the place he and his wife occupied and where they entertained guests at the wedding reception of their only daughter; that the removal to the suburban house was only temporary and respondent at no time intended to remain there permanently or to remove from the city of Iola or to change his residence; that he continued the work of restoring and repairing the residence up until May 17, 1949, and shortly thereafter this place was sold and his goods were stored in the city of Iola and the goods of the purchaser were moved to the property and respondent remained there at the request of the purchaser; that in May, 1949, as he had always intended, the respondent returned to Iola and acquired a home at 415 South Lawrence Street and had continued to live there until the filing of the answer; that the place where the suburban home had been was commonly known by the citizens of Iola as a part of the city. The answer then alleged that shortly after moving to Iola respondent joined the Methodist Church, became a member of the civic club in the city, a member of the Chamber of Commerce and that when he moved to the suburban tract he continued to belong to these organizations; that prior to the general election of 1948 he inquired of the city clerk in what ward in the city he should vote, especially for the school election, which was to be held for the purpose of voting upon bonds for a new school, and the city clerk advised him he

should vote at the courthouse; that this bond election was of vital interest to the citizens of Iola, including respondent, and he so voted to assist in the establishment of an adequate school system in Iola; that respondent became a candidate for mayor of Iola by a petition signed by sixty-nine individuals who believed him to be qualified for the office of mayor; that his declaration as a candidate for nomination was filed on March 8, 1950; that prior to the primary he mailed to each resident of Iola a card announcing his candidacy and advertised his candidacy in the papers; that he received a majority of the votes at this primary; that his qualification was not questioned until about April 23, 1950, when a story in the local newspaper disclosed that an inquiry had been addressed to the attorney general as to his qualifications; that the attorney general gave an opinion as to his qualifications but later withdrew it; that from and after September, 1938, the date upon which respondent located permanently in Iola and established his residence and commenced business there, the respondent had not intentionally or otherwise abandoned his legal residence within the city of Iola but had at all times deemed himself to be a legal resident of the city and that when he sought the office of mayor, that he, himself, and the voters of Iola considered him to be a qualified resident of Iola; that from the 15th of April, 1950, he had discharged all the duties and responsibilities of the office of mayor and was continuing to discharge them; that Waugh had been elected mayor for the two regular three-year terms prior to April 15, 1950, but was not making any claim to or asserting any interest in the office of mayor. The prayer was that petitioner's petition be denied and respondent recover costs.

By stipulation, it was agreed that depositions for both sides be taken and the case submitted to us on that record.

There is not a great deal of dispute as to what actually happened. The only question is the inferences to be drawn from the generally undisputed facts. There can be no doubt but that respondent purchased and at least part of the time lived at a place not within the city limits of Iola. There can be no doubt that the statute already quoted requires that the mayor of a city of the second class should have been a resident of the city for two years prior to his election as mayor. The real question is whether respondent lost his residence in Iola by what transpired with reference to the suburban property. Residence has been defined by our statute as follows:

"The term 'residence' shall be construed to mean the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has

the intention of returning. When a person eats at one place and sleeps at another, the place where such person sleeps shall be deemed his residence."

(See G. S. 1935, 77-201, subpar. 23.)

To decide this question, therefore, we must decide whether Jones had taken the suburban place as his habitation and whether when he was absent he had the intention of returning to that place. The question has been dealt with at various times by us in *Roberts v. Robertson*, 123 Kan. 222, 254 Pac. 1026. There we held:

"Ordinarily the residence of a person is the place where he has established his abode and to which whenever he is absent he has the intention of returning. To accomplish a change of residence there must be not only the intention to establish a new residence, but also the fact of removal thereto."

We further held:

"In changing a residence, intention is an essential element."

In *Harwi v. Harwi*, 143 Kan. 710, 56 P. 2d 449, we said:

"It is elementary law that to establish a residence two essentials are necessary—a deliberate intention to do so, and the carrying of that intention into effect by some appropriate and operative action. An intention alone to establish a residence is insufficient."

In *Arnette v. Arnette*, 162 Kan. 677, 178 P. 2d 1019, we held:

"A citizen may change his residence, either temporarily or permanently. Whether he does so, or which he does, is determined by his acts and his intentions."

In *Littell v. Millemon*, 154 Kan. 670, 121 P. 2d 233, we said:

"It is elementary that residence is a combination of acts and intention. Both must concur."

The result of these holdings is that we must decide from the evidence furnished us whether the acts and intention of Jones were such that it can be said that he continued to be a resident of Iola during the time in question. We have the testimony of the respondent on the question of intent, as follows:

"Q. When you moved to Iola in 1937, was it your intention at that time to establish Iola as your legal residence? A. It was.

"Q. When you voted at the school bond issue, was it your intention to abandon your legal residence? A. It was not.

"Q. What did you consider, and what have you considered to be your legal residence? A. Iola, Kansas.

"Q. And has that contention been continuous since 1937? A. It has never changed."

Thus we have to decide from the declarations by the respondent that he never intended to lose his residence in Iola. The rest of

his evidence consists in a large measure of his story of how he had been in business in Iola at all times since coming to the town in 1937, his belonging to various civic clubs and the Chamber of Commerce and other activities in the city.

What he really depends on, however, is that when he bought the suburban property he only bought it for an investment; that he did not move all of his goods there; he maintained his living quarters at the home of his sister; that he had some of his furniture there and never intended to abandon his residence in the city.

The trouble about cases of this type is, it becomes important for the person claiming a residence at a certain place, at a certain time, to substantiate that claim. Who can say in good faith that he did not intend to change his residence? Nobody knows, of course, what was in the mind of the party testifying. The triers of fact can only test it by other acts performed by him at the same time, and other surrounding facts and circumstances. There are many indicia of residence, many of them common to all of us. There can be no doubt but that this respondent moved into the suburban property and occupied it for a considerable part of the time as his home. He directed the post office to send his personal mail there on a rural route. He listed that as his residence in the telephone directory. His personal property was assessed in that rural township by the township trustee. At that time he gave his address as Route 2 and signed a sworn statement that he lived at that particular place. When he obtained his automobile license he gave his address as Route 2. At the general election he cast his ballot at the voting place for that precinct.

To counteract that state of affairs respondent emphasizes that he declared at the time of the purchase of the property that he only wanted it for an investment; that he only took part of his property there and while he owned the property he did much of the work of repairing it; that he maintained living quarters in Iola, which were frequently occupied and utilized and which he called home; that this was the place where people thought he and his wife lived. With reference to his voting at the election of 1948 he states that he was very much interested in the pending school election and when he was told by the city clerk that he should vote there he voted there on the school issue only. He makes a great point of the fact that nobody questioned his residence and qualifications for mayor until after he had been elected.

As the case was submitted by the parties, we are the triers of fact. We have examined this record very carefully and have concluded that the acts performed by the respondent at the time he moved to the suburban tract were such that he cannot be heard to say now that he did not intend to establish his residence there outside of the city. What really happened, we are inclined to believe, is he did not realize that the tract actually was outside of the city or that residing there would make him a nonresident of the city or that residence would become important. The fact remains, however, that such was the case. The statute is clear as to qualifications for mayor of cities of the class of which Iola belongs. We hold that the judgment must be entered for the plaintiff.