Richard J. BRIGNOLI, Plaintiff,

v.

BALCH, HARDY & SCHEINMAN, INC., Defendant.

No. 86 Civ. 4103 (RWS).

United States District Court, S.D. New York.

Oct. 3, 1988.

**38**

Arie E. David, New York City (Michael E. Plank, of counsel), Scheffler Karlinsky & Stein, New York City (Martin E. Karlinsky, of counsel), for plaintiff.

Kramer, Levin, Nessen, Kamin & Frankel, New York City (Charlotte M. Fischman, Barton L. Seebach, of counsel), Jacobson & Triggs, New York City (John F. Triggs, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Balch, Hardy & Scheinman, Inc. ("Balch, Hardy") has moved by order to show cause to dismiss the complaint in this action for lack of subject matter jurisdiction on the ground that plaintiff Richard J. Brignoli ("Brignoli") is a citizen of the State of New York, not of Connecticut, and thus diversity between parties is lacking. Brignoli has cross-motioned for sanctions against defendant's attorneys. For the reasons set forth below, Balch, Hardy's motion to dismiss the complaint is granted,

1. Brignoli had quit-claimed his one-half interest in their house in Greenwich to Evelyn in March,

and Brignoli's motion to impose sanctions is denied.

*Prior Proceedings*

In this court's opinion dated September 30, 1986, familiarity with which is assumed, defendants' motion to impose sanctions was denied and their motion to dismiss the complaint was granted in part and denied in part. Surviving claims include claims for breach of contract and an unfair competition claim. *See Brignoli v. Balch Hardy and Scheinman, Inc., Scheinman and Hardy*, 645 F.Supp. 1201 (1986) (Sweet, J.). There have been a series of hard fought discovery motions on the jurisdictional issue and that discovery has been completed.

In addition to this case, there is a related case, *Brignoli Models, Inc. v. Balch Hardy & Scheinman Inc., Winston Capital Systems, Inc. and Kenneth J. Winston*, 87 Civ. 5593, in which Brignoli Models, Inc., a developer of computer software investment strategy programs owned by Brignoli, is suing defendants for copyright infringement, breach of contract, theft of trade secrets and misappropriation, breach of fiduciary duty and related torts. Relief requested in the related case totals over one hundred million dollars.

*Facts*

The background to this case is found in this court's opinion of September 1986, *Brignoli v. Balch Hardy and Scheinman, Inc., Scheinman and Hardy, supra.* Included here are additional facts relevant to the current dispute which have been established in discovery.

In June, 1972, Brignoli and his third wife Evelyn Brignoli ("Evelyn") moved from Riverside Drive in New York City to a house in Greenwich, Connecticut. As of that move, Brignoli was domiciled in Connecticut.

On January 25, 1978, a final judgment of divorce was entered between Brignoli and Evelyn. The decree provided that title to the house in Greenwich[1] remain in Evelyn

1974.

Brignoli's name.[2]   Although neither Brignoli nor Evelyn were clear as to when Brignoli actually moved out of the house in Greenwich, after 1978 Brignoli had no ownership interest in the Greenwich home. Nevertheless, Brignoli did leave some belongings there, including marine equipment and personal items. Moreover, he returned to Greenwich frequently to see his children, and he continued to receive some mail at the Greenwich house. He also paid house expenses.

After Brignoli moved out of the house in Greenwich, he lived briefly on a boat in Rowayton, Connecticut and after that, on a boat—the *Carina*—moored at the Glen Island Yacht Club in New Rochelle, New York. The *Carina* was outfitted for full-time living.

Brignoli married Svetlana Brignoli ("Svetlana"), a Yugoslavian citizen, in New Rochelle, New York on March 6, 1982. On the marriage certificate, Brignoli listed New Rochelle as his legal residence, and Svetlana listed New York City as hers. In 1986, Svetlana became a United States Citizen after having lived in New York State continuously from 1980 to 1986.

Svetlana testified that for the first several months of their marriage, she and Brignoli stayed at the apartment which she leased on East 78th Street in New York City during the week and spent their weekends on *Carina*. According to Brignoli, "[w]e sort of spent time at both places. The apartment in the City and on the boat. I wanted to spend more time on the boat." Brignoli depo. at 46. Regardless of whether time was spent at the apartment in New York City or on the boat in New Rochelle, Brignoli and Svetlana lived in New York State.

From November, 1982 through the spring of 1983, Svetlana and Brignoli lived on *Carina* full time while it was docked in New Rochelle, New York. The *Carina* had at least two phone lines, one with a New Rochelle listing, and one for use when the boat was at sea.

In the spring of 1983, Svetlana moved back to New York City. Brignoli joined her "after two or three weeks." Svetlana depo. at 16. For a period thereafter, they continued to spend time either in the New York apartment or on the boat.

Meanwhile, Svetlana and Brignoli's marriage was apparently going through difficult times. Sometime during the end of 1984, Svetlana moved from East 78th Street in New York City to a rental apartment on West 78th which was owned by Brignoli's uncle. Svetlana testified that Brignoli stayed at the new apartment during the first two to four months she occupied it, Svetlana depo. at 18, but Brignoli said he slept there only "once or twice." Brignoli depo. at 39. At least temporarily, however, Brignoli kept a key to the apartment. Svetlana depo. at 18.

Svetlana and Brignoli formally separated in January, 1986 when a separation agreement was signed. They decided to obtain a divorce in 1987. Neither Svetlana nor Brignoli are clear as to when they stopped living together as man and wife: Svetlana says it was sometime in 1984, while Brignoli fails to set forth any particular date.

Sometime after the summer of 1985, Brignoli "attempted to reconcile" with Evelyn, Brignoli depo. at 48, and began to stay at the Greenwich house on occasion. However, neither Brignoli nor Evelyn stated clearly how much time he spent there. Brignoli depo. at 48–49; Evelyn depo. at 28. According to Brignoli, he spent two or three nights a week in Greenwich, "depending on many things." Evelyn was equally vague as to the number of nights Brignoli spent in Greenwich: she said that it varied from one to seven. She did, however, say that Brignoli spent "fewer than 100" nights at her home in 1985, although she was unable to come up with any number for 1986. Evelyn Depo. at 29. In 1986, the

---

**2.** The decree also provided that Evelyn had custody of their two minor children, and that any

visitation "shall be *outside* of the residence of the plaintiff [Evelyn Brignoli], unless the plaintiff shall otherwise consent."

house was renovated with Brignoli's financial assistance.

Brignoli did not have a permanent residence in 1985 and 1986. Sometimes he stayed at his boat which was docked in New Rochelle. Brignoli had a permit to occupy the boat throughout the year, and he listed his address as the Glen Island Yacht Club on a number of documents.[3] However, Brignoli says that he spent very little time on the boat. Brignoli depo. at 53–56. Sometimes Brignoli stayed at Evelyn's house in Greenwich, sometimes at the Columbia Club in New York City, and sometimes in the apartments of friends in New York. "I slept in many, many apartments." Brignoli depo. at 152. Brignoli also owned a condominium in New York, but he did not live there.[4]

Brignoli says that he does not know how much time he spent in Greenwich, in New York City, or on the boat. According to Balch, Hardy, Brignoli spent a great deal of time in New Rochelle, New York based upon his phone records, American Express receipts, and taxi bills. However, other people used his telephone aboard the *Carina*, even when he was not aboard, and took taxis on his "Blue Bird" taxi account. *See, e.g.*, Svetlana depo. at 60.

During the relevant time period, Brignoli had a Connecticut drivers license, incurred expenses on his American Express card in Connecticut, and kept a bank account in Connecticut, although he was not sure if he had written any checks on it that last three years. Brignoli depo. at 80. At the same time, he kept his active bank accounts and securities accounts in New York, worked primarily in New York, registered his car in New York until 1986, and after that, drove a car leased by his business that was registered and garaged in New York, belonged to two clubs in New York (and none in Connecticut) and had physicians, an attorney, and a dentist in New York (although he also had physicians and an attorney in Connecticut).

*Discussion*

■ Title 28 U.S.C. § 1332(a)(1) provides that district courts have jurisdiction over civil matters between "citizens of different states." For purposes of diversity jurisdiction, "citizenship" is synonymous with "domicile." *Vitro v. Town of Carmel*, 433 F.Supp. 1110, 1112 (S.D.N.Y.1977); *Townsend Rabinowitz Pantaleoni & Valente v. Holland*, 109 F.R.D. 671, 672 (S.D.N.Y. 1986) (Sweet, J.). Both parties to this lawsuit agree that Balch, Hardy is domiciled in New York. Therefore, to invoke this court's diversity jurisdiction, Brignoli must be domiciled in a state other than New York. Further, what is relevant for purposes of diversity jurisdiction is the party's domicile at time that plaintiff filed amended complaint—in this case, July 16, 1986. *Spanos v. Skouras Theatres Corp.*, 235 F.Supp. 1, 3 (S.D.N.Y.1964), aff'd 364 F.2d 161, 168 (2d Cir.1966), cert. denied 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966).

The party invoking diversity jurisdiction has the burden of proving diversity. *Willis v. Westin Hotel Co.*, 651 F.Supp. 598, 601 (S.D.N.Y.1986) (citations omitted); *Trager v. New Rochelle Hospital*, 453 F.Supp. 516, 519 (S.D.N.Y.1978). Therefore, Brignoli has the burden of showing that he was domiciled in a state other than New York in July, 1986.

■ The test for domicile has two prongs: "residence in fact, coupled with the purpose to make the place of residence one's home." *Texas v. Florida*, 306 U.S. 398, 424, 59 S.Ct. 563, 576, 83 L.Ed. 817 (1939); *Townsend Rabinowitz Pantaleoni & Valente, P.C. v. Holland Industries, Inc.*, 109 F.R.D. 671, 672 (S.D.N.Y.1986) (Sweet, J.); *Balch Halsey Stuart, Inc. v. Namm*, 446 F.Supp. 692 (S.D.N.Y.1978).

---

3. For example, he used a New Rochelle, New York address as his residence on an application to Citibank for a loan.

4. During the summer of 1986, Brignoli purchased a $300,000 condominium on West 89th Street in New York City, which he co-owns with Svetlana. He has paid part or all of the mortgage payments. However, he does not live in the apartment, and, according to both Brignoli and Svetlana, has stayed in the apartment less than five times. Svetlana depo. at 24; Brignoli depo. at 44. It is likely, as Brignoli maintains, that the apartment was purchased as an investment.

Under this test of residency plus intent, Brignoli and Svetlana were domiciled in New York State after their marriage in 1982. They resided sometimes in New York City and sometimes on a boat in New Rochelle, and there is no evidence that they considered moving to Connecticut. Indeed, in her deposition, Svetlana answered the question of where they intended to live after their marriage by saying: "In the apartment ... during the week and on the weekends on the boat." She also said that the intention changed for a short time when they lived only on the boat. Svetlana Depo. at 37–38. Brignoli, too, said that after his marriage he wanted and intended to live on the boat. Brignoli depo. at 45–46, 212. Thus, after Brignoli's divorce from Evelyn, there is no indication that he intended to make Connecticut his home again.

Brignoli's visits to Connecticut to visit his children and pick up mail do not establish an intent to return to that state for purposes of domicile, nor does the presence of personal belongings in the house of his former wife constitute a basis for a finding of domicile.

■ Because Brignoli was domiciled in New York as of 1982, Brignoli has the burden of seeking to prove the change of domicile to Connecticut. *See Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 243 (1984); *Willis v. Westin Hotel Co.*, 651 F.Supp. 598, 603 (S.D.N.Y.1986). Further, Brignoli must prove the change by clear and convincing evidence. *See Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d at 243 (citation omitted).[5] Brignoli has not met this burden.

■ Failure to prove residence in a particular state, however, does not doom a party from successfully asserting domicile in that state. Where residence is unclear, it is necessary to look to the second prong of the test, intent. *Cf. Townsend Rabi-*

*nowitz Pantaleoni & Valente v. Holland,* 109 F.R.D. 671, 672 (S.D.N.Y.1986) (Sweet, J.) (where evidence establishes residence in both states a court must look to intent to determine domicile).

To ascertain intent, a court must "examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent." *Balch Halsey Stuart, Inc. v. Namm,* 446 F.Supp. 692, 694 (S.D.N.Y.1978). *See also Texas v. Florida,* 306 U.S. 398, 425, 59 S.Ct. 563, 576, 83 L.Ed. 817 (1939). Further, a court must look not at a person's intent to be in a state at a certain time, but rather at his intent to stay there for an unspecified or indefinite period of time. *Townsend Rabinowitz Pantaleoni & Valente, P.C. v. Holland Industries, Inc.,* 109 F.R.D. at 672, quoting *Prakash v. American University,* 727 F.2d 1174, 1180 (D.C.Cir.1984).

Thus, a number of factors will be considered in determining intent to be domiciled in a particular state. Included among relevant factors are:

> where a person resides, whether he owns a home or pays rent ... where his family and personal belongings are located ... where he maintains affiliations with religious and social organizations, where he transacts business and financial matters, where he pays personal taxes, and where he obtained a drivers license.

*United States v. Scott,* 472 F.Supp. 1073, 1079 (N.D.Ill.1979), *aff'd,* 618 F.2d 109 (7th Cir.1980). As this court has said, "No one of these factors can conclusively establish ... domicile. Instead, it is 'necessary to examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent.'" *Townsend, supra,* at 673, quoting *Balch Halsey,* 446 F.Supp. at 694.

We have established Brignoli's intent to be domiciled in New York during the early

---

5. Brignoli cites *Bevilaqua v. Bernstein*, 642 F.Supp. 1072 (S.D.N.Y.1986) (Weinfeld, J.) to show that Brignoli must prove his Connecticut domicile by a preponderance of the evidence, not by clear and convincing evidence. However, reliance on that case is misplaced. *Bevilaqua* says that once plaintiffs' allegations of diversity are challenged by defendant, plaintiff must prove by a preponderance of the evidence that diversity exists, 642 F.Supp. at 1073, but does not say that the standard is preponderance of the evidence for proving a *change* in domicile.

period of Brignoli's marriage to Svetlana. Afterwards, however, there is no clear intent of Brignoli to be domiciled either in Connecticut or in New York. A number of factors point towards an intent to be domiciled in Connecticut: Brignoli's attempt to reconcile with his former wife, Evelyn;[6] his assistance in redecorating the Greenwich house and his payment of redecoration expenses. However, other factors shed doubt on this intent: his failure to establish residence in Connecticut, the fact that he stayed married to Svetlana who was clearly domiciled in New York and the predominance of his connections in New York.

Furthermore, Brignoli repeatedly refused to produce a number of documents requested by defendants and ordered by this court. For example, he never produced his personal checks (he gave Balch, Hardy only 25 checks numbered between 1072 and 1441—less than 7% of the total number written, and all of which were negotiated in Connecticut); and he never produced papers submitted to the U.S. government in connection with Svetlana's U.S. citizenship application. Similarly, Brignoli's tax returns—among other documents—were requested by Balch, Hardy, and this court ordered him to produce them on numerous occasions.[7] However, no returns were produced until Brignoli's opposition to this motion. The tax returns indicate that Brignoli filed in Connecticut as a Connecticut resident.

Balch, Hardy argues that because Brignoli failed to produce documents after being so ordered by this court, this court should draw the inference that Brignoli filed New York State and New York City resident taxes; but at the very least, Brignoli should be precluded from relying on them in opposing this motion. Given Brignoli's failure to produce 93 percent of his checks, and given the late date of the pro-

duction of his tax returns, it is appropriate to assume that they would be adverse to Brignoli's position. It is appropriate to draw inferences detrimental to Brignoli's position. *Cf. United States v. Ianniello,* 824 F.2d 203, 308 (2d Cir.1987) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318–19, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").

Thus, Brignoli has not submitted sufficient evidence to establish that he changed his domicile from New York to Connecticut by July, 1986 and intended such a change.

*Conclusion*

For the reasons set forth above, defendant's motion to dismiss the complaint is granted. As for Brignoli's counter motion for Rule 11 sanctions, it is therefore denied.

It is so ordered.

---

**6.** He was not yet divorced from his fourth wife, Svetlana, nor even formally separated until January, 1986.

**7.** In December, 1987, the court granted Balch, Hardy's motion for expedited discovery. As of January 15, Brignoli had failed to produce any documents, so the court ordered that Brignoli

produce documents concerning his domicile by January 29. A few documents were produced on February 5. On March 11, the court again ordered Brignoli to produce documents within one week, but nothing was produced. So, on April 7 and again on the 21st, the court ordered Brignoli to produce the documents.