**In re Bruce D. RING, Debtor.**

**In re Lois C. RING, Debtor.**

**Bankruptcy Nos. 91–47180–399, 91–47232–399.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Aug. 25, 1992.

Scott Greenberg, Leslie Davis, St. Louis, Mo., for debtors.

E.J. Miller, St. Louis, Mo., for trustee.

David A. Sosne, St. Louis, Mo., trustee.

Matthew R. Niemann, St. Louis, Mo., for Mark Twain Bank.

Francis X. Buckley, Jr., David D. Farrell, St. Louis, Mo., for Mercantile Bank.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

This case requires the Court to determine when the Debtors established their Florida domicile for the purpose of applying state law exemptions as provided in § 522(b)(2)(A) of the U.S. Bankruptcy Code. The Court is called upon to make an intensely factual determination and does so after full trial on the merits.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTS

The facts of this case are the subject of an extensive stipulation. The primary conflict between the parties arises in the interpretation of the facts and application of law thereto. Procedurally, this case arises from Debtor's claim of exemptions and objections to those exemptions filed by Mercantile Bank of St. Louis, National Association ("Mercantile"), Mark Twain Bank ("Mark Twain") and David A. Sosne, the duly appointed Chapter 7 Trustee ("Trustee"), collectively referred to as "the Objectors".

Debtors, Bruce D. and Lois C. Ring, husband and wife, suffered involuntary Chapter 7 petitions filed against them in this District on November 5, and November 6, 1991, respectively. On the petition dates, Debtors, along with their two children, resided at 5800 N.W. 23rd Avenue in Boca Raton, Florida. Prior moving to Boca Raton, Debtors resided in St. Louis, Missouri. Orders for Relief were subsequently entered against both Debtors and thereafter Debtors filed their respective Schedules in each of the above Chapter 7 proceedings. In their Schedule C filings, both Debtors claimed various exemptions premised on the law of Florida. Each of the three Objectors filed an objection to Debtors' claimed exemptions alleging *inter alia* that Debtors were not domiciliaries of the State of Florida for the majority of the 180 day period preceding the petition dates and therefore Missouri law rather than Florida law controlled Debtors' claim of exemptions.

The determinative issue in this case thus is on what date Debtors established domicile in Florida. A chronology of the events surrounding Debtors' move from Missouri to Florida is helpful.

Bruce and Lois Ring both grew up in St. Louis, Missouri and have spent most of their adult lives here. Bruce Ring was engaged in the business of leasing and managing a variety of commercial and residential buildings in the St. Louis area. At some point between late 1990 and early 1991, Bruce encountered financial difficulties in the real estate market and suffered adverse publicity as a result thereof. Therefore, Bruce determined that his family should sell their home in St. Louis, move to Florida and he would pursue other employment opportunities. Both Bruce and Lois testified that it had always been their

dream to move to Florida, and that they frequently vacationed there. In addition, Debtors testified that both their parents owned homes in Florida.

On March 29, 1991, Bruce entered into a contract for sale of the Debtors' residence in Clayton, Missouri. This contract was to close on June 4, 1991. On May 8, 1991, Bruce Ring flew to Florida where he lived with his parents in Sanibel. While in Florida for a period of eight days Bruce:

1. surrendered his Missouri driver's license and obtained a Florida driver's license, listing his address as his parents home in Sanibel;

2. surrendered the certificates of title issued by the state Missouri for the Debtors' two vehicles and obtained Florida license plates and titles for the vehicles;

3. canceled his Missouri voter's registration, registered to vote in Lee County, Florida (county in which Sanibel is located) and obtained a voter registration certificate from the county;

4. executed a declaration of domicile with the Clerk of the Circuit Court for Lee County, Florida; and

5. executed a change of address form with a Florida bank where Debtor maintained an account. Debtor gave his parent's address in Sanibel as his mailing address.

On May 15, 1991, Bruce flew back to St. Louis to be with his wife and children who remained in the family's home in Clayton. On June 4, 1991, Debtors closed on the sale of their Clayton home and shortly thereafter leased an apartment in Clayton. On June 18, 1991, Debtors began receiving their mail at the apartment. When the family moved into the apartment, they placed the bulk of their personal belongings in storage.[1] Both Bruce and Lois testified that the family remained in St. Louis after sale of their home so that their children could complete summer school programs in which they had previously been enrolled. In addition, Lois further testified that the decision to remain in St. Louis through the summer was made on the advice of the children's psychiatrist who had indicated that the move would be less traumatic for the children if they were able to complete their summer programs.

On August 8, 1991, Debtors signed their form 1040 individual tax returns for the 1990 tax year. Debtors listed Bruce's parents address in Sanibel as their address on the tax return. On August 9, 1991 Bruce and Lois flew to West Palm Beach, Florida. Two days later they signed a contract to purchase a home in Boca Raton. Closing was scheduled for September 4, 1991. On August 13, 1991 the following events occurred:

1. Bruce executed a declaration of domicile in Palm Beach County (the county in which Boca Raton is located);

2. Bruce obtained a new Florida driver's license showing his address as their Boca Raton residence; and

3. Lois obtained a Florida driver's license and surrendered her Missouri license.

Bruce and Lois returned to St. Louis on August 14, 1991. For the six days that Debtors were in Florida they stayed at a hotel in Boca Raton. Their children remained in St. Louis with family. From August 14, 1991 through August 17, 1991, Debtors and their children lived with family

---

1. The bulk of the Debtor's personal belongings were in storage because, according to the Debtors, they planned to move to Florida in the near future and did not want to unpack everything only to repack shortly thereafter. The Objectors, however, assert, and the Debtors concede that the property was in storage because all of the Debtors' furniture and other belongings from their house would not fit into the apartment. The Court notes that the Debtors signed a one year lease for the apartment in Clayton, indicating an objective intent on behalf of the Debtors to remain in St. Louis for one year. The Debtors, however, testified that their true intent was to terminate their occupancy prior to the expiration of the lease term. They maintain they only signed the one year lease because no apartments were available in their former neighborhood which offered shorter terms of occupancy. The Debtors emphasized the importance of remaining in the same municipality and school district so that their children would have continuity of activities.

in St. Louis although some of their belongings remained at their Clayton apartment. Finally, on August 17, 1991, Debtors and their children drove to Florida. The family arrived in Florida on August 19, 1991, and in Boca Raton on August 20, 1991. From August 20 through September 4, 1991 the family stayed at a hotel in Boca Raton. The Ring's daughter started school in Boca Raton on August 22, 1991. The family closed on the purchase of their house in Boca Raton on September 3, 1991, and moved into the home on September 4, 1991. Debtors submitted a change of address form to the U.S. Postal Service on September 11, 1991, and on October 30, 1991, Bruce commenced employment.

### Theories of Law

Based on the chronology of events outlined above, Debtors maintain that both Bruce and Lois established Florida domicile when Bruce first travelled to Florida on May 8, 1991, and stayed with his parents at their home in Sanibel. Debtors assert that Bruce's actions in obtaining a Florida driver's license, registering to vote and filing a Statement of Domicile in Lee County, Florida, in conjunction with his intention to locate permanently in Florida made him a domiciliary of Florida on May 8, 1991. According to Debtors, Lois became domiciled in Florida at the time Bruce's domicile changed because they assert that a woman's domicile follows her husband's. Thus, Debtors contend they were domiciled in Florida for the majority of the 180 preceding their bankruptcy petitions.

Conversely, the Objectors assert that the sequence of events establishes that Debtors did not change their domicile until sometime after the ninety-first (91st) day preceding their petitions. Objectors assert that because Lois Ring was not physically present in Florida until August 9, 1991, she could not have established her domicile at an earlier date. Objectors posit that it is an arcane rule of law which holds a woman's domicile follows that of her husband's, and they consider such a rule inapplicable in today's society. With respect to Bruce Ring, Objectors assert that although Bruce was physically present in Florida in May of 1991, he did not possess the requisite intent to remain in Florida at that time and therefore did not establish his domicile at a date prior to the 91st day. Objectors conclude that the Debtors were not domiciliaries of Florida for the majority of the 180 days preceding their petitions. The parties agree that the ninety-first (91st) day preceding the filing of the Chapter 7 petitions against Bruce and Lois is August 6, and August 7, 1991, respectively.

### DISCUSSION

Bankruptcy Code Section 522(b)(2)(A) states that an individual debtor may exempt from his bankruptcy estate property that is exempt under the state law which is applicable on the date of the debtor's petition "at the place in which the debtor's domicile has been located for the 180 days immediately preceding the filing of the petition, or for the longer portion of such 180 day period than in any other place." 11 U.S.C. § 522(b)(2)(A). Thus, it is crucial to determine where the Debtors were domiciled for the majority of the 180 days preceding their petitions.

At common law, the words "domicile" and "residence" were almost invariably employed as synonymous and interchangeable. *Fowler v. Clayton School District*, 528 S.W.2d 955, 957 (Mo.Ct.App.1975) *citing, State ex rel. Stoffey v. LaDriere*, 273 S.W.2d 776, 781 (Mo.Ct.App.1954). Both terms are used to describe "that place where a person has his true, fixed and permanent home and principal establishment to which, whenever he is absent, he has the intention of returning." *State ex rel. King v. Walsh*, 484 S.W.2d 641, 644 (Mo. banc 1972).

Consistent with this definition of domicile is the principal that a person can have but one domicile, which when once established, continues until he renounces it and takes up another in its stead. *Toler v. Workman, (In re Toler's Estate)*, 325 S.W.2d 755, 759 (Mo.1959). Domicile is thus a function of both intent and physical presence and it is presumed to continue until shown to have changed. *Holmes v.*

*Sopuch,* 639 F.2d 431, 434 (8th Cir.1981). A change in domicile requires the concurrence of two elements:

1. physical presence at the new location; and
2. an intention to remain there indefinitely, or the absence of any intention to go elsewhere.

*Holmes v. Sopuch,* 639 F.2d 431, 433 (8th Cir.1981). The Eighth Circuit has explained that in order for a person to have the requisite intent to change domicile that person must intend to reside somewhere indefinitely *with no present or fixed intent to move on upon the happening of a reasonably certain event. Id.* at 434 (emphasis added).

■ The question of intent is to be gathered largely from the acts and utterances of the person whose domicile is under question, and the declaration of the person made before, at, and after the time the domicile is in dispute may be considered. *In re Toler's Estate,* 325 S.W.2d at 760. However, a person's statement designed to create evidence of domicile ... should be received with caution, and, when in conflict with other evidence on the subject, ought always be subordinated to it. *State ex rel. Reardon v. Mueller,* 388 S.W.2d 53, 60 (Mo.Ct.App.1965).

■ Applying such law to the instant matter, we turn first to the domicile of Lois Ring. Lois was not physically present in Florida prior to the 91st day preceding her petition. None-the-less, Debtor maintains that pursuant to *Bridges v. Bridges,* 559 S.W.2d 753 (Mo.Ct.App.1977) she was domiciled in Florida for the majority of the 180 days preceding her petition because of the principle that "a woman's domiciliary is the same as her husband's." *Id.* at 755, *quoting, Cox v. Cox,* 488 S.W.2d 275, 277 (Mo. Ct.App.1972).

■ This Court disagrees with the principle that a woman's domicile follows that of her husband. Such a concept is derived from the long gone era in which women were considered merely homemakers and care-givers for their families. Today, women are these things and much more. More than 57% of all women are employed today in the civilian labor force and more than twice as many women are the heads of single family households today as compared to women in 1960. *Statistical Abstract of the U.S. 1991,* U.S. Dep't of Commerce, 111th ed. 1991, p. 384, p. 45. This Court believes the principle stated in *Bridges* is outdated and declines to apply it to the instant case. Rather, Lois Ring's domicile in Florida must be established, if at all, by her physical presence and intent to remain indefinitely in Florida. As the chronology of events indicate, Lois, simply was not physically present in Florida for the majority of the 180 days preceding her petition. She first set foot in the state on August 9, 1991, which was two days after the 91st day preceding her petition. Accordingly, Lois was not a domiciliary of Florida for the requisite time period under § 522(b)(2)(A).

■ With respect to Bruce, the issue surrounds his intent to remain indefinitely in Florida when he first travelled to Sanibel on May 8, 1991. Bruce testified that he intended at that time to abandon his Missouri domicile and establish domicile in Florida. Indeed, Debtor brings to the Court's attention that Bruce surrendered his Missouri driver's license and obtained a Florida license. Similarly, he registered to vote in Florida and filed a Statement of Domicile with the county. However, the Debtor's statement of his intent and the perfunctory steps which Debtor took to evidence his intent while in Sanibel do not outweigh the impression which the Court has that the Debtor did *not* intend to remain in Florida, but rather, was extremely committed to his family and intended to return to them in St. Louis after spending only a short period of time in Florida. Indeed, the testimony in this case indicates that the Debtors intended to live together as a family unit through what was, and perhaps still is, a particularly difficult time. Mr. Ring's commitment to his family and his intention that the family remain together negates his superficial acts of May, 1991 and his statements that he intended to re-

main indefinitely in Florida at the time of his visit in May, 1991.[2]

Throughout the trial, both Mr. and Mrs. Ring testified that the interests of their children were paramount in making decisions about the family's move to Florida. In fact, Mrs. Ring even sought the advise of a medical professional on how to make the transition from St. Louis to Florida as least traumatizing as possible for the children. Repeatedly, both Debtors testified that they remained in St. Louis through the summer so that their children could finish their summer school commitments.[3] The Court is quite impressed by and convinced that all family decisions were made with the children's welfare in mind. Because of this family commitment, the Court believes that Mr. Ring did not have the requisite intent to remain indefinitely in Florida until such time as his entire family was ready and able to relocate.

Mr. Ring's return to St. Louis after his brief trip to Sanibel indicates to this Court that the family was not ready to relocate until the children's school commitments were completed. Mr. Ring was constantly aware of the needs of his family, including school, proximity to relatives and friends, a suitable home and a source of income for their support. When the children's summer commitments were over and Mr. Ring had completed arrangements for each of these needs, the family was then ready to pick up and leave St. Louis. The Court believes it was at this time that Mr. Ring had the requisite intent to change his domicile.

The facts indicate that the family arrived in Florida on or about August 19, 1991. At this time the family had living arrangements in place in Florida and their commitments in St. Louis were completed. Conse-

quently, the Court believes that on August 19, 1991, Bruce and Lois Ring, for the first time, had both the requisite intent and physical presence necessary to establish Florida domicile. Accordingly, neither Bruce nor Lois Ring were domiciliaries of Florida for the majority of the 180 days preceding their petition dates. Therefore,

IT IS ORDERED that the Objections of Mercantile Bank of St. Louis National Association, Mark Twain Bank, and David S. Sosne, Trustee to the claim of exemptions by Bruce D. and Lois C. Ring are SUSTAINED;

IT IS FURTHER ORDERED that within fifteen days of the entry of this order, both Debtors shall file with the Clerk of this Court an amended schedule of exemptions consistent with this Court's Opinion.

---

**2.** The Court perceives Bruce's visit to Florida in May, 1991 as a calculated step to establish his presence in the state. The Court notes that Bruce stayed with his parents in Sanibel which is on the west coast but eventually obtained a house and employment in Boca Raton, on the east coast. The Debtor's mere mechanical steps in obtaining a driver's license, registering to vote and filing a statement of domicile in Sanibel are nothing more to the Court than outward trappings designed to convey the appearance of a presence in the state and contrived evidence

of an intent to remain. The Debtor's true intent, in the mind of the Court, however, was to return to his family in St. Louis until the family, as a unit, could move to Florida.

**3.** Indeed, the Debtors took careful steps to locate an apartment in the same municipality and school district as their home so that the children's summer school activities would be uninterrupted.