In re Donald F. HODGSON and Betty D. Hodgson, Debtors.

**FARM CREDIT BANK OF WICHITA, Plaintiff,**

v.

Donald Frank HODGSON and Betty Dianne Hodgson, Defendants.

No. 92–4169–RDR.
Bankruptcy No. 89–42002–7.
Adv. No. 90–7095.

United States District Court,
D. Kansas.

May 19, 1994.

Jan M. Hamilton, Hamilton, Peterson, Tipton & Keeshan, Topeka, KS, for debtors/defendants.

Max M. Hinkle, Guilfoyle, Hinkle, Guilfoyle & James, Abilene, KS, for plaintiff Farm Credit Bank of Wichita.

Darcy D. Williamson, Topeka, KS, Trustee.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an appeal from an order of the bankruptcy court. The bankruptcy court's order addressed two matters raised by the parties and both issues have been appealed. Appellants Farm Credit Bank of Wichita (FCB) and the Trustee contend that the bankruptcy court erred in concluding that the debtors were domiciled in Kansas at the time they filed their Chapter 7 bankruptcy petition. FCB also asserts that the bankruptcy court erred in an adversary proceeding arising from the bankruptcy when it found that the debtors had not concealed certain property from it with the intent to hinder or delay FCB's collection efforts. Having carefully reviewed the record and briefs of the parties, the court is now prepared to rule.

■ The factual findings of the bankruptcy court cannot be disturbed unless they are clearly erroneous. *In re Jones,* 9 F.3d 878, 880 (10th Cir.1993). A factual finding is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The bankruptcy court's conclusions of law are reviewed *de novo. Jones,* 9 F.3d at 880. On mixed questions of whether the facts satisfy the proper legal standard, we conduct a *de novo* review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if the question is primarily a factual inquiry. *In re Wes Dor, Inc.,* 996 F.2d 237, 241 (10th Cir.1993).

### DOMICILE OF THE DEBTORS

The bankruptcy court found that the Hodgsons were domiciled in Kansas at the time of the filing of the bankruptcy petition and, therefore, the exemptions provided for in Kansas law applied. FCB and the Trustee contend that the bankruptcy court erred in that determination.

With one exception that the court shall discuss later, the parties have no dispute with the facts found by the bankruptcy court concerning the domicile of the Hodgsons. The court shall set those forth as a starting point for consideration of the arguments of the parties:

The Hodgsons resided in the Wetmore, Kansas area from 1958 to 1986. Clearly, Kansas was their domicile during this period. Dr. Hodgson was a practicing Doctor of Veterinary Medicine until 1982, when he was forced to retire because he had developed an allergy to all animals and suffered a total loss of hearing in one ear and 60% loss in the other. From that point on, the Hodgsons' income was derived from a disability insurance policy which terminates when Dr. Hodgson reaches age 65, social security benefits and interest paid on deposits. At the time of the bankruptcy filing, Dr. Hodgson was 59 years of age.

In March of 1986, the Hodgsons sold their farm near Wetmore on contract, later assigning the contract to the First National Bank of Junction City on September 23, 1987 for $82,500.00. They purchased a lot in Junction City, Kansas, had a home built on it, and moved in during May of 1986.

Mrs. Hodgson was raised in Junction City, her mother still lives there, and Dr. Hodgson was raised in nearby Manhattan, Kansas. They lived in the Junction City home for approximately one and a half years but sold it in October of 1987 because the taxes and maintenance costs were higher than they expected. They then stored their furniture and other personalty with a Junction City moving company.

From October of 1987 to October of 1988, the Hodgsons neither rented nor owned a Kansas residence. Instead, they used the Emporia address of their son, Thomas, to receive mail and for tax and voting purposes. They also stored a motor vehicle there for some period of time. In October of 1988, they rented an apartment in Emporia within 100 yards of Thomas' home, and they received their telephone calls at his home. That same month, they moved about 500 pounds of their stored personalty to their Emporia apartment and had the remaining 4,500 pounds transported to a home they were buying in Mesa, Arizona. Sometime later, Thomas moved to Lawrence, Kansas, and the debtors moved from Emporia and rented another apartment in Junction City, which they were still renting when they filed for bankruptcy. As indicated earlier, Mrs. Hodgson's mother still lives in Junction City.

In 1983, the Hodgsons' son, James, had been attending a vocational school in the Phoenix, Arizona area. After visiting him, the Hodgsons purchased a park model dwelling and lot in an RV park in Apache Junction, Arizona and spent the winter there. Since then, they have spent most of every winter in Arizona. During the winters and springs, they have returned to Kansas from time to time and made excursions to other areas of the United States and Canada. In early 1987, to facilitate their travels, they purchased a motor home for $85,000.00. They considered selling the Apache Junction trailer and living solely in this motor home, but after experiencing a full winter in it rethought that plan. They went ahead and sold the Apache Junction property but purchased a lot in Mesa, Arizona in April of 1988, had a house built there, and closed on a loan for the house that September. This is the house where they sent the bulk of their personalty in October. They sold the motor home in mid–1989.

The debtors' vehicles are titled in Kansas, and they maintain Kansas driver's licenses, vote in Kansas, have a Kansas insurance agent, and file their income tax returns using a Kansas address. Their bank accounts are currently kept in Arizona banks, the majority of their medical services are obtained in Arizona, and much of their mail is received in Arizona, though they do receive some mail in Kansas. A majority of their personalty is in Arizona, and the only house they own is located there. Nevertheless, they state that Kansas is their home, the place to which they always intend to return.

Based upon these facts, the bankruptcy court reached the following conclusion:

Clearly, the debtors' domicile was Wetmore, Kansas from 1958 until they sold their farm in March of 1986. Then Junction City became their domicile until they sold their home there in October of 1987. Beginning in 1983, the debtors spent most of every winter in Arizona. Nevertheless, their domicile remained Kansas at least until the sale of their Junction City home. At that time, they embarked on an extremely nomadic life, but continued to spend winters in Arizona. They continued to vote and pay income taxes in Kansas and maintain Kansas vehicle registrations and driver's licenses. No matter how often they have left Kansas, they have always returned here and say it is their home. They own a house, do most of their banking, and spend winters in Arizona, but no evidence conclusively establishes it to be their domicile. They began spending winters there long before anyone might have said they had given up their Kansas domicile, and their increased traveling does not mean their domicile must now be where they spend the greatest part of the year. At most, all the evidence establishes is that there may be some doubt whether Kansas or Arizona is their domicile. In this situation, their testimony of their intent, which the Court found to be credible,

is enough to tip the balance in favor of a Kansas domicile. *See In re Estate of Phillips,* 4 Kan.App.2d 256, 262–65, 604 P.2d 747 (1980). The FCB and the trustee have failed to establish that the debtors ever intended to abandon Kansas as their domicile.

FCB complains that there is no factual support for the bankruptcy court's finding that "the debtors moved from Emporia and rented another apartment in Junction City which they were still renting when they filed their bankruptcy." The FCB points out that the record shows that the apartment in Junction City was not rented until after the Hodgsons had filed for bankruptcy. We agree. The record shows that the debtors continued to rent the apartment in Emporia until June 1990, over five months after they had filed for bankruptcy. They then rented another apartment in Junction City. The slight misstatement of the facts by the bankruptcy court has no impact on the ultimate decision since under either scenario the debtors had a residence in Kansas at the time they filed for bankruptcy.

The appellants also point out that the bankruptcy court either overlooked or failed to consider numerous other facts that show that the Hodgsons were domiciled in Arizona. In addition, they contend that the bankruptcy court erred in allowing the Hodgsons' testimony that they always intended to return to Kansas to tip the scales in favor of Kansas as their domicile.

A debtor may exempt from his bankruptcy estate property that is exempt under the state law which is applicable on the date of the debtor's petition "at the place in which the debtor's domicile has been located for the 180 days immediately preceding the filing of the petition, or for the longer portion of such 180 day period than in any other place." 11 U.S.C. § 522(b)(2)(A). The burden of proving that a debtor may not claim state law exemptions based upon his domicile at the time of the filing of the petition rests with his creditors. Fed.R.Bankr.P. 4003(c).

■ The first issue that must be examined is whether the court should look to federal law or state law for the definition of "domicile" as used in 11 U.S.C. § 522(b)(2)(A). The parties have not addressed the matter in

any depth. FCB has suggested, relying upon *Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir.1973), that the "determination of a litigant's domicile for purposes of bankruptcy exemptions is a matter of federal courts (sic) but federal courts may look to state law for guidance in defining terms, formulating concepts, or delineating policies." Opening Brief of Appellant FCB at p. 41. The bankruptcy court's decision on the issue is ambiguous. The bankruptcy court relied to a large extent upon a summary of federal common law contained in *Collier on Bankruptcy,* but also cited a decision of the Kansas Court of Appeals in support of its conclusion. Few bankruptcy court decisions have considered this issue. *See In re Wellberg,* 12 B.R. 48 (Bankr.E.D.Va.1981) ("should be a Federal question ... [but] it is, apparently, a question to be determined by the law of the forum.").

■ Generally, the words and phrases contained in a federal statute are defined by reference to federal law. *See Jerome v. United States,* 318 U.S. 101, 104, 63 S.Ct. 483, 485, 87 L.Ed. 640 (1943) ("in the absence of a plain indication to the contrary, ... Congress when it enacts a statute is not making the application of the federal act dependent on state law."). This is particularly true where the federal statute is generally intended to have uniform nationwide application and where the federal program would be impaired if state law were to control. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 43–44, 109 S.Ct. 1597, 1605–06, 104 L.Ed.2d 29 (1989). Resort to uniquely federal definitions is not, however, automatic. "Congress sometimes intends that a statutory term be given content by the application of state law." *Id.* In such instances, a federal court may properly use state law to fill the interstices within a federal legislative scheme. *See Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818, 828 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993).

The question of whether to apply federal common law or state law here as the appropriate point of reference for the issue of domicile under the Bankruptcy Code is largely an academic one since the standard to

be applied under both is essentially the same. Compare *Holyfield,* 490 U.S. at 48, 109 S.Ct. at 1608 and *Morris v. Gilmer,* 129 U.S. 315, 328–29, 9 S.Ct. 289, 293, 32 L.Ed. 690 (1889) with *Estate of Schoof v. Schoof,* 193 Kan. 611, 396 P.2d 329, 331–32 (1964) and *In re Estate of Phillips,* 4 Kan.App.2d 256, 604 P.2d 747, 752 (1980). Although we believe that federal common law should control because the bankruptcy statutes have uniform nationwide application, and application of the law of the states might produce a lack of uniformity, we also recognize that the federal bankruptcy system relies heavily on state law. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

■ The next issue to be considered concerns the application of the burden of proof by the bankruptcy court on the issue of domicile. The Trustee contends that the bankruptcy court incorrectly placed the burden of proof on the Trustee and the FCB on the issue of the domicile of the Hodgsons. The Trustee argues that once FCB and she made a prima facie showing of the Hodgsons' real estate purchase in Arizona, the burden should have shifted to the Hodgsons. In support of this argument, the Trustee relies upon *In re Hollar,* 79 B.R. 294 (Bankr. S.D.Ohio 1987).

The court finds no merit to the argument made by the Trustee. Rule 4003(c) places the burden of proof on the party objecting to the exemptions claimed by the debtors. While the burden of production might have shifted to the debtors with the showing made by FCB and the Trustee, the burden of proof remained with the FCB and the Trustee. *See, e.g., Lew v. Moss,* 797 F.2d 747, 751 (9th Cir.1986). The Hodgsons produced evidence indicating that their Kansas apartment was their domicile. This evidence sufficiently rebutted the evidence produced by the Trustee and the FCB. At this point, the burden of proof remained with the objecting parties, the Trustee and the FCB.

*Hollar,* the case relied upon by the Trustee, is not to the contrary. In *Hollar,* the Trustee produced evidence that the debtor was living on property that was not the same as the property for which an exemption was claimed. 79 B.R. at 296. The debtor failed to rebut that fact with any evidence that the claimed property actually qualified as a residence under Ohio law. *Id.* The failure of the debtor to produce any evidence to rebut the evidence offered by the Trustee required the bankruptcy court to find for the Trustee. *Id.* The court concluded: "That failure to produce appropriate countervailing evidence permits the Trustee to carry his burden of proof and prevail in his objection." *Id.* The bankruptcy court in *Hollar* did not, as suggested by the Trustee, shift the burden of proof to the debtor. Rather, the court only shifted the burden of production. Here, the bankruptcy court properly found that the burden of proof remained with the FCB and the Trustee.

■ With these matters behind us, we turn to the issue at hand—the domicile of the peripatetic Hodgsons at the time they filed their Chapter 7 bankruptcy petition on December 22, 1989. Domicile is "established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Holyfield,* 490 U.S. at 48, 109 S.Ct. at 1608. There is no minimum period of residence required. *Morris,* 129 U.S. at 328, 9 S.Ct. at 293. The requisite intent is to remain at that place for an unlimited or indefinite period of time. *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 555 (5th Cir.1985). A person has only one domicile at a particular time, even though he may have several residences. *Williamson v. Osenton,* 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914). The court must evaluate all of the circumstances of the case to determine the domicile of a party. *Galva Foundry Co. v. Heiden,* 924 F.2d 729 (7th Cir.1991). No single factor can conclusively establish domicile. Among the factors to be considered are: (1) current residence; (2) voting registration and voting practices; (3) location of spouse and family; (4) location of personal or real property; (5) location of brokerage and bank accounts; (6) memberships in churches, clubs, unions and other organizations; (7) location of a person's physician, lawyer, accountant, dentist and stockbroker; (8) place of employment or business; (9) driver's license and automobile registration; and (10) payment of taxes. *District of Columbia v.*

*Murphy,* 314 U.S. 441, 455–58, 62 S.Ct. 303, 309–11, 86 L.Ed. 329 (1941).

■ The determination of domicile is generally regarded as a mixed question of fact and law. *Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir.1983). Such a determination should not be set aside on appeal unless clearly erroneous because it is essentially a factual issue. *Id.*

■ The court has carefully reviewed the evidence presented to the bankruptcy court. We do not find that the bankruptcy court's findings are clearly erroneous. These facts show that the Hodgsons did establish a residence in Arizona. The facts, however, also demonstrate an intent to retain a domicile in Kansas.

The factor that ultimately tipped the scales in favor of a Kansas domicile was the testimony of the Hodgsons that they intended to retain Kansas as their domicile. The appellants contend that the bankruptcy court erred in even considering the testimony of the Hodgsons concerning their intention to retain Kansas as their domicile. In support of this contention, they rely upon *In re Ring,* 144 B.R. 446 (Bankr.E.D.Mo.1992).

The issue of intent and the importance of a party's statements concerning intent in cases where the domicile of a party is in doubt are succinctly addressed in *National Artists Management Co., Inc. v. Weaving,* 769 F.Supp. 1224, 1227–28 (S.D.N.Y.1991) as follows:

Where, as here, there is evidence indicating the party has more than one residence, or the residence is unclear, the court should focus on the intent of the party. *Brignoli v. Balch, Hardy & Scheinman, Inc.,* 696 F.Supp. 37, 41 (S.D.N.Y.1988). "To ascertain intent, a court must 'examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent.'" *Id.* "In ascertaining the intent of the party, that party's entire course of conduct may be taken into account. The party's own statements concerning his intentions are relevant, but they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent." *Bevilaqua v. Bernstein,* 642 F.Supp. 1072, 1074 (S.D.N.Y.1986) (Wein-

feld, J.). "Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of an intent to make it one's home, of course cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent." *Willis v. Westin Hotel Co.,* 651 F.Supp. 598, 601 (S.D.N.Y.1986).

The conclusions of the court in *National Artists* concerning the relevance of a party's own statements on intent are similar to statements made by other courts addressing the issue. *See, e.g., Lew,* 797 F.2d at 750; *Freeman,* 754 F.2d at 556; *Sadat v. Mertes,* 615 F.2d 1176, 1181 (7th Cir.1980); *Korn v. Korn,* 398 F.2d 689, 691–92 n. 4 (3d Cir.1968); *Russell v. New Amsterdam Casualty Co.,* 325 F.2d 996, 999 (8th Cir.1964). As stated by the Supreme Court in *Murphy:*

One's testimony with regard to his intention is, of course, to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts.

314 U.S. at 456, 62 S.Ct. at 310.

In *Ring,* the bankruptcy court considered the issue of the domicile of the debtors. The court applied Missouri law on the issue of domicile and concluded that the debtors had not established a domicile in Florida. In reaching this conclusion, the court rejected the stated intent of one of the debtors to abandon his Missouri domicile and to establish domicile in Florida. The court found that other facts negated his statements that he intended to remain indefinitely in Florida. The court stated that intent should be addressed as follows:

The question of intent is to be gathered largely from the acts and utterances of the person whose domicile is under question, and the declaration of the person made before, at, and after the time the domicile is in dispute may be considered. However, a person's statement designed to create evidence of domicile ... should be received with caution, and, when in conflict with

other evidence on the subject, ought always be subordinated to it.

144 B.R. at 450 (citations omitted).

The court is not persuaded that *Ring* requires a different result in this case. The statements made by the court there are generally in accord with the rules established in the federal courts. Statements concerning intent are relevant, but should be viewed with caution and are entitled to little weight when in conflict with the facts. The truth of assertions made by a person seeking to establish domicile must be determined by the court upon the consideration of all the evidence. In *Phillips*, the case relied upon by the bankruptcy court, the Kansas Court of Appeals, in accord with the rulings of other jurisdictions, stated that "the court must look beyond the expressed intent" of the person seeking to establish domicile. 604 P.2d at 753. We do not believe that the bankruptcy court erred in evaluating the testimony of the Hodgsons. He found the statements of the Hodgsons concerning intent to be credible and concluded that these statements, coupled with the other evidence in the record, tipped the scales in favor of a Kansas domicile. There was evidence in the record which corroborated the Hodgsons' professed intent and substantiated their claim that Kansas remained their domicile. The bankruptcy judge had the opportunity to carefully evaluate this testimony. He was aware of all the evidence in the record, including those matters which suggested an Arizona domicile, and he still concluded that the testimony of the debtors was credible. The determination of credibility is best left to the observations made by the bankruptcy judge as the trier of fact. Fed.R.Bankr.P. 8013. Given the state of the facts, we do not find that the bankruptcy judge erred in concluding that the debtors' intent, which he found to be credible, tipped the scales in favor of a Kansas domicile. A consideration of all the factors in the case supports the finding of a domicile in Kansas. Accordingly, this aspect of the bankruptcy court's decision shall be affirmed.

*INTENT TO HINDER, DELAY OR DEFRAUD THE FCB*

■■■ FCB objected to the discharge of the debtors based upon a contention that they had transferred or concealed property within one year of bankruptcy with the intent to hinder, delay or defraud the FCB. FCB argues that the bankruptcy court erred in not concluding that the debtors had concealed certain property with the intent to hinder or delay FCB when they moved cash investments of $350,000.00 to institutions outside the State of Kansas in 1987.

■■■ A debtor shall receive a discharge in bankruptcy unless he transfers, removes, destroys, mutilates or conceals any of his property within one year before the date of the filing of the bankruptcy petition with the intent to hinder, delay or defraud a creditor. 11 U.S.C. § 727(a)(2)(A). In order to deny a bankruptcy discharge, evidence of actual intent to hinder, delay or defraud creditors must be shown. *See In re Wines*, 997 F.2d 852, 856 (11th Cir.1993). Whether the debtor had the requisite wrongful intent is a question of fact. *Id.*

The facts as found by the bankruptcy court are not disputed by the parties. In August 1987, FCB filed suit to foreclose on some grasslands owned by the Hodgsons. In September 1987, the Hodgsons transferred monies from a bank in Junction City to banking institutions in Arizona and Kansas City, Missouri. In 1988, FCB obtained a judgment against the Hodgsons. The ensuing foreclosure sale left a deficiency of $227,460.00. Some discussions were had between the FCB and debtors following the foreclosure sale, but FCB did little to collect its judgment. FCB contended in the bankruptcy court that the Hodgsons moved their monies with the intent to hinder, delay or defraud it.

The bankruptcy court rejected FCB's claim. The court ruled as follows:

The FCB had sued the debtors the month before they moved [their money from a Junction City bank to banking institutions outside Kansas] but did not obtain a judgment until one year later. The debtors still had the money in CD's when the FCB got the judgment, but it never asked them where the money had gone. In fact, they retained the money in CD's in the same institutions for one year and nine months before they liquidated the CD's and paid one of their creditors. The FCB has cited no law indicating debtors must leave their money where their creditors can most easi-

ly find it, and no evidence indicates the debtors moved the money in order to hinder, delay or defraud the FCB.

After a careful review of the record, we do not find that the bankruptcy court's findings of fact were clearly erroneous. Accordingly, we shall also affirm this aspect of the bankruptcy court's order.

**IT IS THEREFORE ORDERED** that the bankruptcy court's order of July 7, 1992 be hereby affirmed.

**IT IS SO ORDERED.**