No. 43,784

The Estate of Ralph T. Schoof, Deceased, *Appellant*, v. ROBERT LESTER SCHOOF, *Appellee*.

(396 P. 2d 329)

Opinion filed November 7, 1964.

*George P. Nellans*, of Norton, argued the cause, and was on the briefs for the appellant.

*William J. Ryan*, of Norton, was on the briefs for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The matter to be decided in this appeal is whether venue for the probation of the will of Ralph T. Schoof and the administration of his estate is in Ford or Norton county. The petition to probate decedent's last will and testament was filed in the Norton county probate court, where written defenses to said petition were interposed by Robert Lester Schoof, a nephew of the decedent, who was bequeathed the sum of One Dollar ($1.00) by his uncle.

After a hearing, the probate court decided that venue was in Norton county and admitted the will to probate. The protesting nephew appealed and the matter was tried anew by the district

court which determined the venue to be in Ford county and directed that the files be transmitted to the probate court of Ford county. This appeal by the executor of the Schoof estate is from the latter judgment.

The answer to our question lies in residence. The applicable statute, G. S. 1949, 59-2203, provides in pertinent part as follows:

"*Venue.* Proceedings for the probate of a will or for administration shall be had in the county of the residence of the decedent at the time of his death; if the decedent was not a resident of this state, proceedings may be had in any county wherein he left any estate to be administered. . . ."

It is the executor's contention that the decedent, on the date of his death, was a nonresident of Kansas with property in Norton county, while Robert, the dissident kinsman, maintains that his uncle resided in Ford county. The latter's claim was credited by the district court which found that at the time of his death, Ralph T. Schoof was a resident of Ford county. The appellee, nephew Robert, states in his brief that the sole question to be determined in this appeal is whether there is substantial competent evidence to support the district court's finding, and in this we believe him correct.

The evidence, which includes certain stipulated facts, is undisputed. In about December, 1961, the decedent (sometimes called Schoof herein) who then resided in Ford county, entered the State Sanatorium for Tuberculosis patients at Norton. Here, on December 7, 1962, his will was executed and in it Schoof was described as a resident of Ford county. On December 21, 1962, Schoof and a fellow patient, Elmer Van Ness, took French leave from the sanatorium and traveled, in decedent's car, to the great southwest, there to spend their last days. This journey, according to Van Ness, was "the end of Kansas." The first stop in the enchanted lands of sun and sand was made at Yuma, Arizona, where the two men stayed ten or twelve days and Schoof bought a trailer house. From Yuma they moved on to Winterhaven in the California desert, where they lived in Schoof's trailer. While at Winterhaven, Schoof registered his car and obtained California license plates for it and his trailer house, giving Winterhaven as his address, and Van Ness applied for a California driver's license. Schoof's mailing address for social security and railroad retirement checks was changed first to Yuma and then to Winterhaven and Westminister, California.

Although urged by friends to return to the sanatorium, Schoof refused because of personal feelings toward certain hospital per-

sonnel, and he refused to go back to Dodge City because he felt that his sister-in-law and friends "had not done him right." Van Ness testified that he and Schoof established their residence in California and that both of them considered that state as their residence while they were there. This was corroborated by Marybelle Rowley, a friend of the decedent, who testified that Schoof had told her over the phone that he had taken up residence in California. Sometime in February, Schoof and Van Ness visited the latter's mother in Oklahoma City and here Schoof passed away on March 26, 1963. At the time of Schoof's death, Van Ness was in Arkansas looking for a small place which the two might buy and move into.

Before leaving the sanatorium, Schoof had given his lawyer, Nellans, a number of bonds for safekeeping, and most of these remained in Norton county at Schoof's death. The decedent's car was turned over to Nellans subsequent to decedent's death and it also was within Norton county when proceedings were there commenced to probate his estate.

At Yuma, Schoof had executed a Power of Attorney dated January 14, 1963, appointing Nellans to sell his Dodge City real estate. In this document, Schoof was described as "a resident of Norton and Ford Counties in the State of Kansas, and most recently a resident of Norton, Norton County, Kansas." In a letter of transmittal, Schoof wrote that he would inform Nellans of his permanent address in a few days. Although the record does not clearly disclose whether the Dodge City real estate was sold, Van Ness testified he was quite sure that it had been, and we were advised to such effect by appellant's counsel on oral argument.

Turning to the legal points involved, we first note that for purposes of statutory construction, G. S. 1949, 77-201, *Twenty-third,* defines residence as follows:

"The term 'residence' shall be construed to mean the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has the intention of returning. When a person eats at one place and sleeps at another, the place where such person sleeps shall be deemed his residence."

In applying this statutory definition to specific situations this court has, on more than one occasion, delineated the legal principles governing the establishment and change of residence. A brief recapitulation at this point may prove helpful.

We have held that while there may be a distinction between domicile and residence for many legal purposes, the terms are

substantial equivalents where the jurisdiction of a court is involved. (*Gleason v. Gleason,* 159 Kan. 448, 155 P. 2d 465; *Irvin v. Irvin,* 182 Kan. 563, 322 P. 2d 794.) The same rule, we believe, may be said to obtain when the question in issue is one of venue.

The establishment of residence requires the concurrence of two factors: one physical, the other intellectual. There must be bodily presence at a location coupled with intent to remain there either permanently or for an indefinite period, before residence can be said to have been acquired. A residence once established is presumed to continue until the same has been abandoned. (*Keith v. Stetter,* 25 Kan. 100; *Palmer v. Parish,* 61 Kan. 311, 313, 59 Pac. 640.) To effect a change of residence, there must be transfer of bodily presence to another place coupled with an intent to abide in the new location either permanently or indefinitely. (*Ford, Adm'x, v. Peck,* 116 Kan. 74, 225 Pac. 1054.) The length of the stay in the new abode is not of controlling importance, for no stated period of time is required to complete a change of residence; the change may be effectuated on the first day of arrival in the new location provided the requisite intent to establish residence therein be present. (*Blair v. Blair,* 149 Kan. 3, 85 P. 2d 1004; *Arnette v. Arnette,* 162 Kan. 677, 178 P. 2d 1019.) In 17A Am. Jur., Domicil, § 34, it is said:

". . . Mere absence from a fixed home, however long continued, cannot work the change. On the other hand, the shortest absence, if intended as a permanent abandonment, is sufficient to effect such abandonment, although the party may soon after change his intention." (p. 223.)

As we have previously stated, the evidence before us is not in conflict. Accordingly, we are not asked to weigh conflicting evidence. Our only function is to determine whether the evidence, uncontradicted as it is, supports the trial court's finding that the decedent's residence was in Ford county at the time he died. (*Irvin v. Irvin,* supra.) In making this evaluation, we are to be guided by the rules enunciated above.

Obviously, the decedent was not physically present in Ford county when he expired. It is likewise obvious from the record that he had no intention of returning to that county, despite the earlier reference in his will. We find no evidence in the record to justify a finding or to create any inference that the decedent intended to or did retain his former residence in Ford county. On the contrary, the evidence clearly shows that he had abandoned

Kansas and had physically removed himself to California where he intended to abide. Both witnesses who took the stand, Van Ness, the decedent's boon companion, and Marybelle Rowley, his friend of long standing, testified that Mr. Schoof intended California to be his new abode and that he considered himself a California resident. This testimony does not appear inherently improbable, nor was it discredited by cross-examination. Nothing in the record is shown to justify its having been disregarded. (*Gibbs v. Central Surety & Ins. Corp.*, 163 Kan. 252, 181 P. 2d 498; *Irvin v. Irvin*, supra.)

The testimony of Van Ness and Rowley is corroborated, and Schoof's intention plainly revealed, by the steps he took upon arriving in California. At Winterhaven, he moved into his new trailer house, in its desert setting, and occupied it for considerable time; he directed that his mail be changed to his California address; he applied for California registration for his car, giving his address as Winterhaven; and he obtained California license plates for both his car and trailer house. These common *indicia* of residence (*State, ex rel., v. Jones*, 169 Kan. 521, 219 P. 2d 706) lend added weight to the oral testimony of the witnesses and significantly attest to the decedent's purpose of establishing residence in California.

We are mindful that in February, 1963, Schoof and Van Ness were visiting in Oklahoma and planning to buy a place in Arkansas. This plan, obviously unformed when the two left Norton, was never carried to completion and, thus, would not even effect a change of residence from the one they had established in California. Certainly, under no circumstances, could it be said to revive the residence abandoned in Ford county.

Nor can nephew Robert derive any comfort, or draw fuel for his duel with Norton county, in the reference to residence found in the Power of Attorney. In the first place, the document was executed at Yuma on January 14, apparently before entrance had been made into the promised land. Secondly, the language refers to Norton county, not Ford, as having been Schoof's most recent Kansas residence.

We are forced to conclude that the record contains no evidence to sustain the finding that decedent was a resident of Ford county at the time of his death. Rather, the record reveals that the decedent had abandoned whatever residence he formerly had in

Kansas and had established residence in California. Since property belonging to the decedent was left in Norton county, Kansas, venue for the probate of his will and the administration of his estate lies in that county, and the proceedings were properly commenced there.

The judgment of the court below is reversed with directions to remand this cause to the probate court of Norton county, Kansas, for the probate of the last will and testament of Ralph T. Schoof, and for the administration of his estate.