(604 P.2d 747)
No. 50,286

## In the Matter of the Estate of Robert L. Phillips, Deceased.

Petition for review denied March 7, 1980.

Opinion filed January 4, 1980.

*John H. Fields*, of Carson, Fields and Boal, of Kansas City, for appellant Thelma L. Phillips.

*L. Franklin Taylor*, of Payne & Jones, Chartered, of Olathe, for appellees Robert Laidlaw Phillips, Jr., William Ward Phillips and Paula Phillips.

Before FOTH, C.J., ABBOTT and REES, JJ.

ABBOTT, J.: This is an appeal from an order determining the legal residence of the decedent, Robert L. Phillips, to have been in the State of Missouri at the time of his death. His widow, Thelma L. Phillips, appeals.

The practical importance of determination of decedent's residence is that if he died a resident of the State of Kansas, his widow is entitled to claim one-half of the estate, but if the

decision of the trial court that decedent died a resident of the State of Missouri is affirmed, the widow would be entitled to a significantly smaller share of the estate. The reason for this result is the will provides that in addition to a specific bequest and a specific devise, the widow receives one-third of the residuary estate and decedent's children receive the remaining two-thirds. Pursuant to Missouri law (Mo. Ann. Stat. § 474.160.1[1] [Vernon 1979 Supp.]), that provision would be effective. If on the other hand decedent was a resident of Kansas at the time of death, the widow may elect a statutory share of one-half of the decedent's estate pursuant to K.S.A. 59-603. The distribution of property worth more than $100,000 appears to turn on resolution of the residence question.

The appellant, Thelma L. Phillips, is decedent's second wife. The appellees, Robert L. Phillips, Jr., William W. Phillips and Paula J. Phillips, are the adult children of the decedent by a former marriage.

The decedent died on February 9, 1978, at his home in Johnson County, Kansas. That same day his widow petitioned the District Court of Johnson County to probate decedent's will as the will of a Kansas domiciliary. Decedent's three children answered by denying the decedent's Kansas residence and requesting admission of the decedent's will as that of a nonresident. After hearing evidence the court rendered its memorandum decision, concluding that the decedent died a resident of the State of Missouri. The widow appeals.

Before reaching a decision on the residence question, we dispose of the motion by appellees to dismiss the appeal on the ground that this Court is without jurisdiction because the memorandum decision did not constitute an appealable order. In essence, appellees contend that the memorandum decision does not fall within any of the enumerated categories of appealable orders set forth in the Kansas probate code at K.S.A. 1978 Supp. 59-2401. On the other hand, the widow argues that the decision is appealable under three distinct subsections of 1978 Supp. 59-2401(a). We hold that we have jurisdiction by reason of a court order dated November 28, 1978, entered after the filing of the notice of appeal, which refused to admit the will to probate as that of a resident decedent and admitted the will to probate as that of a nonresident decedent. In our view, the mentioned refusal of admission brings that order within K.S.A. 1978 Supp. 59-2401.

The remaining question is whether the prematurely filed notice of appeal was effective. This issue has been resolved by Rule No. 2.03 (224 Kan. xxxiv), which states:

"A notice of appeal filed subsequent to an announcement by the judge of the district court on a judgment to be entered, but prior to the actual entry of judgment as provided in Sec. 60-258, shall be effective as notice of appeal under Sec. 60-2103, if it identifies the judgment or part thereof from which the appeal is taken with sufficient certainty to inform all parties of the rulings to be reviewed on appeal. Such advance filing shall have the same effect for purposes of the appeal as if the notice of appeal had been filed simultaneously with the actual entry of judgment, provided it complies with Sec. 60-2103(*b*)."

Supreme Court Rule No. 2.03 also applies to appeals brought under the probate code in light of K.S.A. 1978 Supp. 59-2401(*c*), which states: "Except as otherwise provided in this section, appeals taken pursuant to this section shall be taken in the manner provided by chapter 60 of the Kansas Statutes Annotated for other civil cases."

The Kansas Supreme Court recently considered the rule in *Security National Bank v. City of Olathe,* 225 Kan. 220, 221, 589 P.2d 589 (1979), holding that a premature notice of appeal is timely so long as it identifies the appealed judgment with sufficient certainty to inform the prevailing party below of the rulings to be reviewed on appeal. In that case, the Court found the notice of appeal to be timely since the prevailing party did not contend that it had insufficient notice of the rulings appealed. The parties here likewise made no protestations of surprise. We are satisfied we have jurisdiction by reason of K.S.A. 1978 Supp. 59-2401(*a*)(1).

The widow's position in this appeal is basically that the trial judge's findings of fact are inconsistent with his decision that decedent died a Missouri resident. At the outset, it should be noted that the decedent was born and raised in Missouri and intended to retain his Missouri residence when he and his wife purchased, remodeled and moved into a home in Johnson County, Kansas, in December 1975. That fact is beyond dispute. Decedent had been active in the management of the Phillips Hotel in downtown Kansas City, Missouri. It was part of a family-owned corporation that also held title to substantial amounts of real estate in Missouri. Decedent had been active in Democratic politics in Missouri for years, and the trial judge rightfully found him to have been proud of his strong and

long-standing Missouri heritage. His first marriage was termi-
nated by divorce and he married the appellant widow in Mound
City, Missouri, on March 11, 1973. The family corporations were
liquidated and assets were distributed to the stockholders, at
which time the decedent took up residence on a 450-acre farm in
Mound City, Missouri, he had accepted as part of his distributive
share. Various witnesses described the home as a hunting lodge.
He also owned other real estate at that time consisting of a
one-thousand-acre farm near Albany, Missouri, and a vacation
home in Shell Knob, Stone County, Missouri.

Decedent unquestionably was a Missouri resident until De-
cember 23, 1975, when he and the appellant moved from Mound
City, Missouri, to Johnson County, Kansas. His health had started
to fail prior to his move to Kansas. He had cardiovascular prob-
lems and developed inoperable lung cancer that ultimately led to
his death. He expressed to his daughter and one son his intent to
move back to Kansas City. They testified that their father thought
medical care in Mound City was inadequate for his medical
problems, and "[h]e wanted to be closer to better medical atten-
tion and also friends." Decedent and his wife spent some seven or
eight months looking at houses before purchasing the Johnson
County home. The decedent contacted his lawyer specifically to
ascertain how he could maintain his Missouri domicile while
living in Kansas.

After moving into the home in Johnson County, decedent
executed his last will and testament that declared his residency as
Stone County, Missouri. He registered his motor vehicles in
Missouri. Decedent and Mrs. Phillips both continued to obtain
Missouri driver's licenses. They paid personal property and state
income taxes in Missouri. No income or intangible tax returns
were ever filed in Kansas. After they left Mound City, Missouri,
they used the Missouri office address of decedent's accountant on
their tax returns. They voted in Stone County, Missouri.

The decedent continued to divest himself of his Missouri real
estate after moving to Kansas. We do note that although the
largest acreage (one thousand acres) had been on the market for
some time, its sale was not completed until January 1978—less
than one month before the death of decedent. Decedent still
owned the vacation home at Shell Knob, Stone County, Missouri,
at the time he died. Evidence was presented that decedent had

considered selling the vacation home, but was in no hurry to do so and it was not on the market at the time he died. The evidence indicates that the Shell Knob home was nothing more than a vacation home. It had been used four or five times a year for a week at a time by the Phillips when they lived at Mound City. As decedent's health deteriorated, the use of the vacation home diminished.

After hearing evidence, the trial judge considered the law and the evidence and issued a memorandum decision, concluding that:

"Taking all the evidence into consideration and the Findings of Fact as previously announced, I conclude that Robert L. Phillips died a resident of the State of Missouri. The operative acts of voter registration, automobile registration, driver's license issuance, tax return filings, real estate ownership and his long and close association with the State of Missouri lead me to this conclusion along with his clear intention to maintain Missouri as his legal residence as expressed in his Last Will and Testament."

Mrs. Phillips argues that the trial court's finding No. 14 is inconsistent with its decision that decedent died a resident of Missouri and conclusively establishes that he died a resident of Kansas. Finding No. 14 reads: "When Mr. Phillips was absent from 2517 West 68th, Mission Hills, Kansas, he clearly intended to return to 2517 West 68th. It was his home. He ate, slept and lived there."

It should be noted that for jurisdictional purposes the terms "residence" and "domicile" are treated as equivalents. *In re Estate of Barnes,* 218 Kan. 275, 282, 543 P.2d 1004 (1975). This Court recently reviewed the well-settled Kansas rules relating to the determination of a "residence" in *Teter v. Corley,* 2 Kan. App. 2d 540, 542-43, 584 P.2d 651 (1978), where it was held:

"The law concerning the establishment and continuance of a 'residence' is well stated in *Estate of Schoof v. Schoof,* [193 Kan. 611, 396 P.2d 329 (1964)], as follows:

" 'The establishment of residence requires the concurrence of two factors: one physical, the other intellectual. There must be bodily presence at a location coupled with intent to remain there either permanently or for an indefinite period, before residence can be said to have been acquired. A residence once established is presumed to continue until the same has been abandoned. (*Keith v. Stetter,* 25 Kan. 100; *Palmer v. Parish,* 61 Kan. 311, 313, 59 Pac. 640.) To effect a change of residence, there must be transfer of bodily presence to another place coupled with an intent to abide in the new location either permanently or indefinitely. (*Ford, Adm'x, v. Peck,* 116 Kan. 74, 225 Pac. 1054.) The length of stay in the new abode is not of controlling importance, for no stated period of time is required to complete a change of residence; the change may be effectuated on the first day of arrival in

the new location provided the requisite intent to establish residence therein be present. . . .' (193 Kan. at 614.)

"In reality, two separate intentions are involved: one to abandon the old location and one to abide in the new. If the last intention be formed, it necessarily includes the first. *Arnette v. Arnette,* 162 Kan. 677, Syl. ¶ 4, 178 P.2d 1019 (1947).

"We believe the definition set forth in *Estate of Schoof v. Schoof,* supra, is controlling, that is, 'residence' requires two elements: (1) bodily presence at the location, and (2) intent to remain there either permanently or for an indefinite period."

The Kansas legislature has also set forth the statutory definition of "residence" in K.S.A. 77-201, *Twenty-third,* where it states:

"The term 'residence' shall be construed to mean the place adopted by a person as such person's place of habitation, and to which, whenever such person is absent, such person has the intention of returning. When a person eats at one place and sleeps at another, the place where such person sleeps shall be deemed such person's residence."

The trial judge effectively found in his finding No. 14 that the decedent met the above statutory definition of "residence." If the trial judge had concluded that the decedent died a resident of Kansas, there is ample evidence in the record to support such a finding. The Kansas home was the center of the decedent's domestic, social and civic life; all of his mail (excluding tax matters) was delivered there; it was completely furnished and decedent's wife resided there with him, as did the family pets; and decedent had an office in the basement of the home. The question before us, however, is whether substantial competent evidence exists to support a conclusion that the decedent died a resident of Missouri.

Our scope of review is well defined. When a trial court has made findings of fact and conclusions of law, the function of this Court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *City of Council Grove v. Ossmann,* 219 Kan. 120, 546 P.2d 1399 (1976). It is not the function of an appellate court to weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. When a trial judge sitting as a trier of facts makes a specific finding of fact on apparently conflicting or actually conflicting evidence, this Court is concerned only with evidence that supports the trial court's findings and not with evidence that might have supported contrary findings. *Steele v.*

*Harrison,* 220 Kan. 422, Syl. ¶ 1, 552 P.2d 957 (1976); *Arnette v. Arnette,* 162 Kan. 677, 681, 178 P.2d 1019 (1947). Where the decedent intended to reside is a question of fact.

Substantial competent evidence has been defined as evidence possessing something of substance and relevant consequence and which furnishes substantial basis of fact from which issues can reasonably be resolved. *Rush v. King Oil Co.,* 220 Kan. 616, 618, 556 P.2d 431 (1976). Even if findings of the trial judge appear to be inconsistent, the decision of the trial court may be sustained on the basis of those findings which allow the conclusion reached by the court below, if they are supported by evidence. *Landrum v. Taylor,* 217 Kan. 113, 117, 535 P.2d 406 (1975).

Can decedent's declarations of his "intent" to remain a Missouri resident *standing alone* counteract the objective intent derived from the sum of his activity in Kansas? We think not. Although no Kansas cases discuss the specific problem, commentators and several foreign jurisdictions have treated the matter and agree that the court must look beyond the expressed intent of the decedent.

At 25 Am. Jur. 2d, Domicil § 24, p. 18-19, the following rule appears:

"Intent is not a matter of artifice. It does not rest with a man to determine the place of his domicil by expressing an intent which is contrary to the facts in an attempt to avoid the inevitable legal consequences of such facts. The acts of the person must correspond with the purpose to change his domicil."

The American Law Institute has given the subject extensive treatment in its Restatement (Second) of Conflict of Laws (1971). Several pertinent discussions include:

"*g. Intention to acquire a domicil.* The primary intention required for the acquisition of a domicil of choice is an intention to make a home rather than an intention to acquire a domicil. Were it otherwise, persons could choose to be domiciled in a state of low burdens and high benefits quite irrespective of where they actually happened to live. A person's domicil of choice is in the state to which he is most closely related rather than in the state where he wishes to be domiciled. A desire to retain an old domicil does not, of itself, prevent the acquisition of a new one.

"An intention to acquire a domicil in a place may on occasion have some significance. Two situations can be imagined. The first is where a person's significant contacts are in state X and yet he desires to be domiciled in state Y. Here no effect will be accorded the desire to be domiciled in Y; such a desire cannot serve to remove the domicil from the state which is obviously that of closest relationship.

"The second situation arises infrequently. It is where a person's significant contacts are closely divided between two or more states. Here, on occasion, the person's desires as to the location of his domicil may be permitted to tip the scales in favor of one state or the other (see Comment *h* and § 20, Comment *c*)." § 18 at 74-75.

The United States Supreme Court applied such a rule in *Texas v. Florida,* 306 U.S. 398, 83 L.Ed. 817, 59 S.Ct. 563 (1939), when it held that declarations alone were insufficient to establish domicile because "the actual fact as to the place of residence and decedent's real attitude and intention with respect to it as disclosed by his entire course of conduct are the controlling factors in ascertaining his domicile. [Citation omitted.] When one intends the facts to which the law attaches consequences, he must abide the consequences whether intended or not." (at 425.) The Restatement goes on to explain:

"*Formal declarations.* A person's declarations as to what he considers to be his home, residence or domicil are generally admissible as evidence of his attitude of mind. Such declarations are frequently contained in formal legal documents, as wills, deeds and affidavits; they may also appear in letters, in hotel and automobile registrations and, at times, are made by word of mouth. Whatever the context, their accuracy may be suspect because of their self-serving nature, particularly when they are made to achieve some legal objective, as the avoidance of taxation or the securing of a divorce.

"*Informal declarations.* Greater weight is likely to be accorded a person's casual statements, such as that he is happiest in a certain place or wishes to die there, than to formal declarations of the sort discussed above. Casual statements gain credence from the fact that they presumably were uttered on the spur of the moment and with no preconceived design to gain a given end.

"*Acts.* Actions speak louder than words, and the courts rely most heavily upon them. Residing for a considerable time in a place is persuasive evidence of domicil there, although this can be rebutted by proof that this residence was meant to be temporary or that the person has a principal home elsewhere.

"Since a man's home will usually be with his family, the place where his wife and children dwell is likely to be his domicil (see § 12 Comment *g*). So when he leaves his family behind and goes to another place, his domicil presumably remains unchanged. In the absence of evidence as to the place where a person lives, however, he will probably be found to be domiciled in the place where he works unless it can be shown that his job is only of a temporary nature. Similarly, the location of a person's bank is some evidence as to the place of his domicil since, for the sake of convenience, he would presumably wish to deal with a bank close to his home. Of less weight is the location of a person's securities since these may not require local supervision.

"Beyond all this, the place to which a person has the closest and most settled relationship is likely to be that where he votes, where he belongs to a church, where he pursues his various interests and where he pays taxes of the sort that are

payable only by persons who are domiciled there. The courts frequently rely heavily upon such activities. On the other hand, activities of this sort will sometimes be suspect for the reason that often they can be deliberately carried on in one place rather than in another for the express purpose of influencing a future court decision on the issue of domicil.

"*Motive.* A person's motive in going to a certain locality may be important evidence as to whether he intends to make his home there (see § 18, Comment *f*).

"By way of conclusion, almost anything that bears on a person's attitude of mind toward a place is admissible in evidence. But, in final analysis, the courts place primary emphasis upon a person's home life and upon what he does rather than on what he says." § 20 at 82-83.

"The question whether a person's desires as to the location of his domicil should be accorded even a limited effect may depend upon the particular issue involved. Thus, it might be thought that this should not be the case with respect to questions involving governmental benefits and burdens, as taxation, poor relief and judicial jurisdiction. On the other hand, some weight should perhaps be accorded these desires in areas where normally the desires of the person concerned are supreme, such as in matters relating to the distribution of property upon death. There is little evidence that such distinctions have been drawn by the courts." 18 at 77.

For authority that actions speak louder than words, see *Charisse v. Eldred,* 252 Ark. 101, 104-05, 477 S.W.2d 480 (1972); *Fowler v. Clayton School District,* 528 S.W.2d 955, 959 (Mo. App. 1975); *Citizens Bank & Trust Co. v. Glaser,* 70 N.J. 72, 357 A.2d 753 (1976); *Shaw v. Shaw,* 155 W. Va. 712, 716-17, 187 S.E.2d 124 (1972).

Standing alone, an expressed intent to remain a resident of a state in which one no longer resides is not necessarily sufficient to retain residency when other facts are present that would indicate a contrary intent. As Restatement (Second) of Conflict of Laws notes, however, when a person's significant course of conduct is closely divided between two or more states, his stated intent as to the state of his residence may be permitted to tip the scales in favor of that state.

Something more than a mere physical move and physical presence in the new state, however, is required to establish a new domicile in the new state. We are further of the opinion that something more than merely meeting the bare requirements of K.S.A. 77-201, *Twenty-third* is required to establish residency for resident estate purposes. If this is not so, then once a person disposes of real estate or moves from rental property and establishes a home in another state, residence in the first state would be lost even though one did not intend to remain permanently or for

an indefinite period in the second state. Nor should a presumption be created that a person intends to remain permanently or for an indefinite time in the second state based on the fact that one has knowledge of impending death and thus knows, barring a miracle, that one will never return to one's native state. Our Supreme Court has previously stated that "[t]o effect a change of residence, there must be a transfer of bodily presence to the new location coupled with intention to abide therein either permanently or indefinitely." *Estate of Schoof v. Schoof*, 193 Kan. 611, Syl. ¶ 3, 396 P.2d 329 (1964).

This is a case in which the decedent had significant contacts in both states and is an appropriate case in which the trial judge could find a stated purpose and intent tips the scale in favor of finding a Missouri domicile. Other factors are present which are favorable to finding Missouri residence. A party alleging a change of residence has the burden of proving the existence of the new residence. *Teter v. Corley*, 2 Kan. App. 2d at 543. Having established a Missouri residence, decedent was presumed to remain a Missouri resident until he established a new residence. The decedent obviously knew his life span was limited when he expressed a desire to return to the greater Kansas City area. The trial judge did not make an express finding that the decedent intended to remain in Kansas permanently or for an indefinite time. He was in Kansas because of the advice of his lawyer that he could retain his Missouri residency, and he planned the distribution of his estate based on his Missouri residency. In addition to his voting in Missouri, paying taxes in Missouri, registering cars in Missouri and obtaining driver's licenses in Missouri, he had other significant contacts in that state. The decedent reviewed his will and furnished a list of his considerable assets on December 23, 1977 (one and a half months before his death). All of his assets at that time except for the Johnson County home and a relatively small bank account were located in Missouri. In addition to the vacation home, decedent did not complete the sale of the one-thousand-acre farm in Missouri until some unspecified date during the calendar month preceding his death. No showing is made that the decedent might have had a greater tax burden as a Kansas resident than as a Missouri resident. The only difference drawn to our attention is that in Kansas the widow could elect to take against the will and thus receive a greater distributive share

than she could receive in Missouri. Although she did not consent to the will, she was aware of its existence while the decedent was living and knew of the provisions that had been made for her. We conclude that the trial court did not err in determining that the decedent died a resident of the State of Missouri.

Affirmed.