(275 P.3d 923)

No. 105,470

STATE OF KANSAS *ex rel.* SRS and ALEXANDRA A. BRADISH, a Minor Child, by her Mother, CHERI M. BRADISH, *Appellees*, v. KEVIN KETZEL, *Appellant*.

Opinion filed May 4, 2012.

*Joseph W. Booth*, of Lenexa, for appellant.

*Ronald W. Nelson*, of Ronald W. Nelson, PA, of Lenexa, and *Michael Lucansky*, of Overland Park, for appellees.

Before HILL, P.J., GREEN, J., and LARSON, S.J.

HILL, J.: Kevin Ketzel claims the district court lacked jurisdiction to modify a child support order under the Uniform Interstate Family Support Act, K.S.A. 23-9,101 *et seq*. Under the Act, a Kansas court has continuing, exclusive jurisdiction to modify a child support order if any one of the following is a Kansas resident: the one who pays the support, the one who receives the support, or

the child. In this case, in 2008, mother and daughter moved to Hong Kong where mother married the CEO of a corporation where she now works. Later, the child received a Hong Kong identity card, no longer receives Medicaid assistance, and is attending school. Because mother and daughter are no longer Kansas residents as defined by the Act and Ketzel has moved to Missouri, we hold the Kansas court had no authority to modify this child support order. We reverse the district court's order increasing the child support obligation.

*The couple's daughter was born in Kansas.*

While Cheri Bradish was living in Kansas, she and Kevin Ketzel had a daughter named Alexandra, a girl with special needs born in December 1994. In 1995, the Secretary of Social and Rehabilitation Services filed a parentage action on behalf of Alexandra. As a result of stipulations, the Johnson County District Court declared Ketzel the father of Alexandra and confirmed the existing sole custody to Bradish. The court also ordered Ketzel to pay child support.

Sometime later, Bradish notified Ketzel in a letter that she and Alexandra were going to be moving to Hong Kong. The letter noted that effective September 16, 2008, Bradish and Alexandra would be at an address in Sai Kung, Hong Kong. In October 2008, Alexandra started attending school in Hong Kong. But because of visa issues, Alexandra could not attend school regularly until March 2009. Alexandra had been issued a Hong Kong identity card in February 2009.

In March 2009, Bradish filed a motion to increase child support in the Johnson County District Court. Bradish subsequently submitted to the court a domestic relations affidavit notarized in Hong Kong. It listed her address in Clearwater Bay, Hong Kong. Bradish claimed $2,200 a month in self-employment income and $5,250 a month in total expenses. By this time, Ketzel was residing in Missouri.

Bradish later submitted responses to requests for production of documents and interrogatories. Bradish (1) provided an address in Sai Kung, Hong Kong, as both her residence and mailing address; (2) identified herself as being married to the CEO of a corporation

in Shatin, Hong Kong; (3) claimed a 50 percent interest in that corporation commencing May 26, 2008, which also employed her full-time with her wages at approximately $2,200 a month; (4) acknowledged she formerly operated "Cheri Bradish's Salon" in Kansas as a sole proprietorship for the years 2006 and 2007; and (5) stated that Alexandra stopped receiving Medicaid assistance in September 2008. In response to Ketzel's request for copies of all of her tax returns for the years 2004 through 2008, Bradish responded: "2005 tax return is attached. I have not filed taxes for the other years."

*Did the district court have jurisdiction to increase the order?*

On July 13, 2009, a hearing officer increased Ketzel's child support obligation to $2,868 per month and offsetting the $5,000 owed Ketzel under the August 23, 2005, agreement against special needs equipment costs of $6,856, leaving Ketzel owing $1,856 to Bradish. That same day, Ketzel filed a motion for a de novo appeal to the district court. Bradish subsequently countered by filing a motion to dismiss Ketzel's de novo appeal, claiming Ketzel failed to set the matter for hearing within the time constraints required under Johnson County Local Court Rule 26(12)(c). On October 28, 2009, the district court considered arguments and granted Bradish's motion to dismiss. The next day, Ketzel filed a motion to set aside the July 13, 2009, modified child support order, alleging that the district court lacked subject matter jurisdiction under the Uniform Interstate Family Support Act, specifically K.S.A. 23-9,205(a).

On December 18, 2009, Bradish filed a response with a supporting affidavit. Bradish acknowledged that she was no longer physically present in Kansas and had been living with Alexandra in Hong Kong since September 2008, where she had married a Hong Kong resident and Alexandra attended school. Bradish, however, argued that Kansas retains continuing, exclusive jurisdiction to modify the child support order. In her affidavit, Bradish made the following two statements. First, "I maintain Kansas as my domicile. I maintain my driver's license in Kansas, I maintain my voter's registration in Kansas, and I continue to pay income taxes to the state of Kansas as a resident of the state of Kansas." Second, "I

have not changed my residence or domicile to any place other than Kansas and I intend on returning to live in Kansas when able to do so."

On June 15, 2010, the district court conducted a telephone conference between the parties to hear arguments and denied Ketzel's motion. Ketzel's subsequent motion to amend the court's order was denied.

*We note some features of the Act.*

Frequently in America, separating couples move to other jurisdictions. So, after the parents go their separate ways, mother and child often move to a different state while father moves to a third state. Or, there can be any number of different combinations of these movements that can take them to several separate jurisdictions. Because we are a republic, child support laws and procedures vary with each jurisdiction. This lack of uniformity and resulting difficulties for those seeking to enforce payments of child support induced the states to adopt the Uniform Interstate Family Support Act. In Kansas, the Act begins at K.S.A. 23-9,101.

The goal of the Act is to eliminate multiple and inconsistent support orders. By using the procedures set out in the Act, and by obtaining the cooperation of various courts and child support enforcement agencies, one child support order controls, no matter where the parties have moved. This is accomplished through the concept of continuing exclusive jurisdiction. This rule limits when a court can modify a child support order. Under this system, only one controlling support order is in effect at any given time. *In re Marriage of Metz*, 31 Kan. App. 2d 623, 625, 69 P.3d 1128 (2003). A Kansas court exercises continuing, exclusive jurisdiction over a child support order issued consistent with Kansas law for "[a]s long as this state *remains the residence* of the obligor, the individual obligee or the child for whose benefit the support order is issued." (Emphasis added.) K.S.A. 23-9,205(a)(1). All other states must defer jurisdiction unless each individual party consents in writing to the assumption of continuing jurisdiction by the court of another state. See K.S.A. 23-9,611(a); *Gentzel v. Williams*, 25 Kan. App. 2d 552, 965 P.2d 855 (1998).

Thus, we are required to decide if the district court here had the authority to modify the existing support order. Subject matter jurisdiction is the authority of the court to hear and decide a specific action brought before that court. *Marriage of Metz*, 31 Kan. App. 2d at 625. Whether the district court has subject matter jurisdiction under the Act to modify its child support order is a question of law over which this court has unlimited review. *In re Marriage of Myers*, 30 Kan. App. 2d 1223, 1225, 56 P.3d 1286 (2002).

*The district court erred by applying principles of probate law to this question of residence under the Act.*

When the district court denied Ketzel's motion to set aside the 2009 modified child support order, it relied on *In re Estate of Phillips*, 4 Kan. App. 2d 256, 604 P.2d 747, *rev. denied* 227 Kan. 927 (1980), and Bradish's self-serving affidavit. The district court decided that Bradish was a resident of Kansas for purposes of determining its jurisdiction under the Act:

"Based on the statements in [Bradish's] affidavit and based upon the definition of residence contained in the Phillips opinion, the Court is going to find that Cheri Bradish has not abandoned her Kansas residence, that she does not intend to establish a new residence in Hong Kong, and for those reasons she remains for the purposes of the Uniform Interstate Family Support Act a resident of Kansas . . . ."

In denying Ketzel's subsequent motion to amend the decree, the district court ruled that Kansas has not lost continuing, exclusive jurisdiction under the Act because Bradish was "domiciled in Kansas." Domicile is not a term used in the Act.

The *Phillips* court had to decide if the decedent was a resident of Kansas or Missouri when he died. Knowing his life span was limited, the decedent moved to Johnson County. The court found he was in Kansas because of the advice of his lawyers that he could retain his Missouri residency and he planned the distribution of his estate based on his Missouri residency. The court determined he died a resident of Missouri. See 4 Kan. App. 2d at 266. Domicile and residence have been used in probate cases interchangeably for many years.

The district court's interchangeable use of the terms residence and domicile results from its reliance on the holding in *Phillips*. In that case, the court reiterated that for jurisdictional purposes *in probate actions* "the terms 'residence' and 'domicile' are treated as equivalents." 4 Kan. App. 2d at 260. We also note that when the district court denied Ketzel's motion to amend the decree it also cited court of appeals' opinions from Georgia and California which interpreted the term "residence" for purposes of UIFSA. See *In re Marriage of Amezquita & Archuleta*, 101 Cal. App. 4th 1415, 1421-22, 124 Cal. Rptr. 2d 887 (2002); *Kean v. Marshall*, 294 Ga. App. 459, 465-66, 669 S.E.2d 463 (2008).

To decide this question, we look first at the Act and not dated probate law or rulings from other jurisdictions. K.S.A. 23-9,205(a) prescribes the rule controlling the exclusive jurisdiction of a Kansas court when dealing with an interstate support order.

"(a)   A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:

(1)   as long as this state remains the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued, or

(2)   until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and to assume continuing, exclusive jurisdiction."

This same section is known as Section 205(a) in the Interstate Family Support Act (2008). Official comments to the Act are informative.

In fact, the comments to Section 205(a) of the Act undercut the district court's ruling:

"As long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its child-support order—which in practical terms means that it may modify its order. . . .

"Subsection (a)(1) states the basic rule, and subsection (a)(2) states an exception to that rule. First, the time to measure whether the issuing tribunal has continuing, exclusive jurisdiction to modify its order, or whether the parties and the child have left the state, is explicitly stated to be at the time of filing a proceeding to modify the child-support order. Second, the term in subsection (a)(1) *'is the residence'* makes clear that any interruption of residence of a party between the date of the issuance of the order and the date of filing the request for modification does not affect jurisdiction to modify. Thus, if there is but one order, it is the controlling

order in effect and enforceable throughout the United States, notwithstanding the fact that everyone at one time had left the issuing state. If the order is not modified during this time of mutual absence, a return to reside in the issuing state by a party or child immediately identifies the proper forum at the time of filing a proceeding for modification. Although the statute does not speak explicitly to the issue, temporary absence should be treated in a similar fashion. Temporary employment in another state may not forfeit a claim of residence in the issuing state. *Of course, residence is a fact question for the trial court, keeping in mind that the question is residence, not domicile."* (Emphasis added.) Uniform Interstate Family Support Act § 205 Comment, 9 U.L.A. 94 (2011 Supp.).

Those comments clearly indicate the drafters intended to differentiate between the residence and domicile of all parties and the children and that subsection (a)(1) calls for the retention of continuing, exclusive jurisdiction in Kansas only if the district court makes a finding that at least one of the parties or the child remained in the state as a resident at the time of filing. In *In re Marriage of Metz*, 31 Kan. App. 2d at 629, a panel of this court found that the comment shows, contrary to appellant's argument, that subsection (a)(1) provides for the retention of continuing, exclusive jurisdiction, whereas subsection (a)(2) provides for the loss of continuing, exclusive jurisdiction. *Metz* controls here.

Going further, we note that no Kansas court has held the term "residence" under K.S.A. 23-9,205(a)(1) is synonymous with domicile, nor will we. Because the Act itself offers no definition for the term "residence," we turn to the definition established by the Kansas legislature in K.S.A. 77-201, *Twenty-third,* where it states:

" 'Residence' means the place which is adopted by a person as the person's place of habitation, and to which, whenever the person is absent, the person has the intention of returning. When a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence."

Given the requirements of K.S.A. 77-201, *Twenty-third,* there is ample evidence in the record to support a finding that Bradish and Alexandra were residents of Hong Kong and not residents of Kansas at the time the motion to modify was filed. The record does not indicate Bradish possessed a Kansas home or mailing address. Thus, the Hong Kong home where Bradish and Alexandra actually lived with Bradish's husband was the center of all aspects of their domestic, social, and public life.

The district court ruled that *Phillips* required proof of two intents: "The first intent is to abandon Kansas as a residence, the second intent is to establish the new country or state as the residence." See 4 Kan. App. 2d at 261. The district court ruled that when intent is at issue, Bradish "has the more persuasive argument when it is her intent that is being construed. In other words, she intends to return to Kansas, she does not intend to change Kansas as her residence, and she considers herself as a resident of the State of Kansas." Thus, the district court considered Bradish's statements of intent in her affidavit dispositive.

The trouble with that holding is it ignores facts and relies on self-serving statements of intent. The ruling essentially makes the objective evidence meaningless. A simple self-serving statement that, "some day, I will return to Kansas" controls over all evidence to the contrary. The district court failed to consider this court's discussion in *Phillips* regarding intent. Citing the Restatement (Second) of Conflict of Laws, § 18, Comment b, p. 70 (1971), the *Phillips* court noted that formal declarations as to what the declarant considers his or her residence or domicile to be are generally admissible as evidence of his *attitude of mind*. But whatever the context, " 'their accuracy may be suspect because of their self-serving nature, *particularly when they are made to achieve some legal objective . . .*' " (Emphasis added.) 4 Kan. App. 2d at 263. More importantly, this court ruled:

"Standing alone, an expressed intent to remain a resident of a state in which one no longer resides is not necessarily sufficient to retain residency when other facts are present that would indicate a contrary intent. As Restatement (Second) of Conflict of Laws notes, however, when a person's significant course of conduct is closely divided between two or more states, his stated intent as to the state of his residence may be permitted to tip the scales in favor of that state." 4 Kan. App. 2d at 264.

Bradish's formal declarations in her affidavit of her intent to remain a Kansas resident, standing alone, do not counteract the objective view of her intent derived from the sum of her activity in Hong Kong. The record shows Bradish's Hong Kong home is the center of all aspects of her life, Bradish married a Hong Kong resident who is CEO of a Hong Kong corporation that Bradish

claims a 50 percent interest in and which employs her full-time, and Alexandra attends school in Hong Kong. Unlike *In re Marriage of Anderson*, 25 Kan. App. 2d 754, 969 P.2d 913 (1998), where the father moved from one state to another strictly for temporary employment, Bradish appears to have left Kansas to start a completely new life by establishing residency in Hong Kong. In *Estate of Schoof v. Schoof*, 193 Kan. 611, 614, 396 P.2d 329 (1964), our Supreme Court stated: "To effect a change of residence, there must be transfer of bodily presence to another place coupled with an intent to abide in the new location either permanently or indefinitely." In her affidavit, Bradish indicated that she intended "on returning to live in Kansas when able to do so." In other words, she intended to remain in Hong Kong indefinitely or for the foreseeable future. See 193 Kan. at 614. The record does not furnish a substantial basis of fact for any of the claims in Bradish's affidavit. A reasonable mind would not accept Bradish's claims sufficient to support a conclusion. See *In re Estate of Farr*, 274 Kan. 51, 58, 49 P.3d 415 (2002).

Bradish's claim that she continued to pay income taxes to the State of Kansas is directly contradicted in an earlier sworn statement notifying Ketzel that she had not filed tax returns from 2006 onward. Bradish did not "maintain" her Kansas driving license. K.S.A. 8-248 commands any person issued a driving license shall notify the division within 10 days of any change in name by marriage or change in mailing or residence address. The photocopy of Bradish's driving license from 2005 attached to her affidavit did not reflect Bradish's Hong Kong address, but an old Kansas address that Ketzel claims was foreclosed upon. Also, the record is not clear whether Bradish kept her last name on her driving license or took her new husband's last name of Keller and failed to notify the division. In her May 2009 domestic relations affidavit and the December 2009 affidavit, Bradish signed using the last name Bradish. But in the July 2009 response to the first set of interrogatories, Bradish answered using both the last name of Bradish and Keller and signed using the name Keller. Finally, other than Bradish's claim that she maintained voter registration, there is no indication Bradish exercised her right to vote since relocating to Hong Kong.

See Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. § 1973ff-2 (2006). Bradish could have simply chosen the option of registering to vote when she applied for her driving license in 2005.

Kansas courts lose continuing, exclusive jurisdiction under subsection (a) once all parties and the children have established homes elsewhere or no longer reside in Kansas. *Metz*, 31 Kan. App. 2d at 627. In *Metz*, the parties divorced in Kansas and the father subsequently moved to Oklahoma whereas the mother and children moved to Virginia. The father filed a motion in Kansas to modify his child support obligation. This court held that the Kansas court retained subject matter jurisdiction to enforce the original child support order after both parents and children moved from Kansas, but it no longer had subject matter jurisdiction to modify the child support order under K.S.A. 23-9,205(a)(1). 31 Kan. App. 2d at 630. See *In re Marriage of Myers*, 30 Kan. App. 2d at 1227, where the court held that Kansas lost continuing and exclusive jurisdiction under K.S.A. 23-9,205(a)(1) once the mother and child moved to Arkansas and the father to Texas.

In addition, all states that have adopted the Act have addressed this issue. All agree that the issuing state loses subject matter jurisdiction once all parties and the children no longer reside in the issuing state. See *State ex rel. Brantingham v. Grate*, 205 S.W.3d 317, 321 (Mo. App. 2006); *In re B.O.G.*, 48 S.W.3d 312, 318 (Tex. Civ. App. 2001); *Jurado v. Brashear*, 782 So. 2d 575, 580 (La. 2001); *Groseth v. Groseth*, 257 Neb. 525, 533, 600 N.W.2d 159 (1999); *Etter v. Etter*, 18 P.3d 1088, 1091 (Okla. App. 2001); *Cohen v. Powers*, 180 Or. App. 409, 416, 43 P.3d 1150 (2002).

This court reviews the district court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. An appellate court has unlimited review of conclusions of law. *In re Marriage of Atchison*, 38 Kan. App. 2d 1081, 1085, 176 P.3d 965 (2008).

The district court's finding that Bradish is a Kansas resident is not supported by competent evidence, and the court has ignored other competent evidence that she is not a Kansas resident. The district court's legal conclusion that Bradish is a Kansas resident misapplies probate law concepts to this proceeding. The district court, as a result, erroneously ruled that it had continuing, exclusive jurisdiction to modify the child support order under the Act when it did not.

Therefore, we reverse the district court and in compliance with K.S.A. 23-9,306 remand with directions to the district court to forward the matter to the appropriate tribunal in Missouri, where Ketzel is a resident.

Reversed and remanded with directions.