NOT DESIGNATED FOR PUBLICATION

No. 115,822

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DARRICK A. RIPPETOE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed August 25, 2017. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Edmond Brancart*, special assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., ATCHESON, J., and FAIRCHILD, S.J.


PER CURIAM: After an evidentiary hearing, the Wyandotte County District Court denied Darrick A. Rippetoe's motion for habeas corpus relief from convictions and sentences imposed on him as part of a negotiated plea of several felonies that resulted in his being placed on probation. Rippetoe failed on probation and began serving the lengthy sentences. He then filed this motion under K.S.A. 60-1507 claiming his legal representation fell below the standard of adequacy required in the Sixth Amendment to the United States Constitution and asserting that but for the inadequate lawyering he

1

would have rejected the plea deal and gone to trial. We find no error in the district court's denial of Rippetoe's motion and affirm.

FACTUAL AND PROCEDURAL HISTORY

In 2012, Rippetoe faced felony charges in four separate cases in the district court. In 10 CR 1548, the State charged Rippetoe with involuntary manslaughter for striking and killing a pedestrian while driving under the influence of alcohol or drugs and then leaving the scene. In 11 CR 997, the State charged Rippetoe with aggravated battery and aggravated intimidation of a witness for an attack on a person identified as a potential witness in the involuntary manslaughter case. In 11 CR 150, the State charged Rippetoe with felony theft. In 11 CR 1181, the State charged Rippetoe with aggravated failure to appear. Rippetoe was no stranger to the criminal justice system. He had previous convictions for several felonies and misdemeanors.

The district attorney's office and Rippetoe's lawyer worked out an elaborate plea arrangement in late summer 2012 disposing of all of the cases. Under the agreement, the State dismissed the theft and failure-to-appear cases. Rippetoe agreed to plead guilty to involuntary manslaughter in 10 CR 1548 and to aggravated battery and aggravated intimidation in 11 CR 997. The agreement included a joint sentencing recommendation:

•An aggravated guidelines sentence for involuntary manslaughter in 10 CR 1548 to be served consecutive to the sentence in 11 CR 997, plus postrelease supervision;

•A downward durational departure of 30 months on an aggravated guideline sentence for aggravated battery in 11 CR 997 to be served concurrent with an aggravated guideline sentence for aggravated intimidation of a witness in that case;

•A dispositional departure to probation in both 10 CR 1548 and 11 CR 997; and

2

•Payment of restitution, as appropriate, in all four cases.

The district court held a hearing in September 2012 at which the agreement was placed on the record, the State dismissed 2011 CR 1520 and 2011 CR 1181, and Rippetoe pleaded guilty in 10 CR 1548 and 11 CR 997. The district court accepted the pleas after a lengthy discussion with Rippetoe and the lawyers during which Rippetoe was advised of potential maximum sentences and waived his right to trial.

After presentence investigation reports were prepared in 10 CR 1548 and 11 CR 997 and distributed to the lawyers about 2 months later, the district court sentenced Rippetoe in conformity with the plea agreement. Rippetoe received a sentence of 128 months on the involuntary manslaughter conviction in 10 CR 1548 and a controlling sentence of 45 months on the aggravated battery conviction in 11 CR 997, yielding an overall term of 172 months in prison to be followed by 24 months of postrelease supervision. The district court placed Rippetoe on probation for 36 months.

In February 2013, the State filed a motion to revoke Rippetoe's probation for violating several conditions and later amended the motion to include allegations that Rippetoe had admitted using alcohol and methamphetamine. At a revocation hearing in April, Rippetoe stipulated to some of the violations including his use of alcohol and methamphetamine. The district court revoked the probation and ordered Rippetoe to serve the underlying sentences in both cases.

Rippetoe appealed the probation revocation to this court. While the appeal was pending, he filed a motion in the district court for habeas corpus relief, as provided in K.S.A. 60-1507. The district court dismissed the motion because the probation revocation appeal had not been decided. Rippetoe voluntarily dismissed the appeal. He filed a new habeas corpus motion in April 2014 alleging the lawyer handling the pleas and

3

sentencing inadequately represented him. We outline the particular allegations of substandard representation in our legal analysis. The district court held an evidentiary hearing on the motion in February 2016 and filed a written order in early March denying the motion. Rippetoe has now appealed that ruling.

LEGAL ANALYSIS

When reviewing the denial of a 60-1507 motion after a full evidentiary hearing, an appellate court accepts the district court's findings of fact to the extent they are supported with substantial competent evidence. The appellate court exercises unlimited review of the determinative legal issues in light of those factual findings. *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

The Sixth Amendment guarantees a criminal defendant the right to competent legal representation. To demonstrate constitutionally ineffective assistance of the lawyer handling his criminal case in the district court, Rippetoe must show the representation fell below an objective standard of reasonableness resulting in legal prejudice, meaning there probably would have been a different outcome had the representation been adequate. See *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3-4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance); see also *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 (2006) (stating *Strickland* test and *Chamberlain* standard of review).

In short, Rippetoe must identify *both* substandard lawyering and resulting legal prejudice. As the United States Supreme Court and the Kansas Supreme Court have emphasized, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by an arguable or perceived lack of success. See *Strickland*, 466 U.S. at 689-90 (noting potential

4

distorting effects of hindsight review, so courts generally should presume lawyer's representation falls within "wide range of reasonable professional assistance"); *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). By attacking the pleas and resulting convictions in his 60-1507 motion, Rippetoe must prove the prejudice component of the *Strickland* test by establishing that with constitutionally adequate representation he would have chosen to go to trial rather than to plead. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *State v. Adams*, 297 Kan. 665, 666, 304 P.3d 311 (2013); *State v. Szczygiel*, 294 Kan. 642, 646-47, 279 P.3d 700 (2012) (Sixth Amendment ineffectiveness of counsel and resulting prejudice in context of motion to withdraw plea).

Reviewing courts commonly first assess the quality of the representation, and if it satisfies the Sixth Amendment standard of adequacy, they dispense with any consideration of prejudice as unnecessary. The district court did so here. But that is not a hard and fast approach. A reviewing court may deny relief based on the absence of prejudice without deciding the constitutional sufficiency of the legal representation. See *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *Sola-Morales v. State*, 300 Kan. 875, 886, 335 P.3d 1162 (2014). We choose that approach.

Rippetoe contends that before the plea hearing, the lawyer representing him on the criminal charges misinformed him about the length of the total underlying sentence he likely would receive if he were placed on probation. That's the amount of time Rippetoe probably would spend in prison if he were to violate the terms of his probation. Rippetoe claims the lawyer said the overall sentence would be no more than about 8 years. At the 60-1507 hearing, the lawyer testified he told Rippetoe the plea deal would include a lengthy underlying sentence but believes he did not identify a specific or approximate term because that would depend on Rippetoe's criminal history. The lawyer said he emphasized that the plea offer included a joint recommendation to the district court for probation.

According to Rippetoe, the lawyer also never explained that because he would be entering pleas in two separate cases on the same day, each would be counted as part of his criminal history in the other, thereby increasing the presumptive guideline sentences. And he says that point—what has since been referred to as the "crisscross" effect—wasn't understandably explained to him when he entered his pleas in the district court. At the 60-1507 hearing, the lawyer testified that the district attorney's office refused to consolidate the cases for plea, which would have eliminated the crisscross effect. The lawyer agreed the point can be hard to understand and Rippetoe seemed to be "consistently confused" about the underlying sentence he faced as the case moved toward sentencing.

Rippetoe asserts that had he been competently advised he would have refused the plea deal with its underlying prison term of 173 months in favor of going to trial. So, Rippetoe says he should get a trial (or trials) now.

For purposes of this appeal, we assume without deciding that the lawyer did not provide Rippetoe constitutionally adequate representation leading up to the plea hearing, at the plea hearing, and through sentencing by failing to estimate his likely prison sentence and failing to outline how his criminal history would be determined. We underscore that our assumption is just that—an assumption—and we intend no intimation whatsoever about the quality of the lawyer's actual performance. Nonetheless, we dispense with an analysis of the competency component of the *Strickland* test and turn to the prejudice component.

Apart from Rippetoe's bare assertion that he would have gone to trial—an assertion he made for the first time after his probation had been revoked and he faced nearly 15 years in prison—all of the evidence is to the contrary. The presentence investigation reports made available to Rippetoe and his lawyer before the sentencing hearing were consistent with a controlling prison term under the plea agreement of far

6

more than 8 years. But that ostensible discrepancy apparently didn't prompt Rippetoe to speak up. Even if Rippetoe missed that signal, he knew the length of the underlying prison term for sure as soon as he was sentenced. But Rippetoe said nothing during the sentencing hearing about some problem with the punishment he received. And he did not try to withdraw his plea after the sentencing. See K.S.A. 2016 Supp. 22-3210(d)(2) (defendant has up to 1 year to move to withdraw plea after sentencing to prevent "manifest injustice").

Rippetoe didn't do any of those things because he received probation—the principal benefit he sought in the plea agreement. Rippetoe's lawyer painstakingly underscored the importance of probation to his client at the sentencing hearing in an effort to persuade the district court to follow the plea agreement. He told the district court Rippetoe had been and remained deeply remorseful about the death of the man he hit. The lawyer emphasized Rippetoe was the primary parent to his infant child and "want[ed] to live on probation for his child." To that end, the lawyer explained Rippetoe has secured a good job. Finally, the lawyer also pointed out that under the plea agreement, Rippetoe would face more than a decade in prison if he were unsuccessful on probation.

Rippetoe first cried foul months later only after he had frittered away his probation. Under the circumstances, Rippetoe has failed to show he actually would have gone to trial. His conduct was to the contrary. And the law gives weight to the adage that oftentimes actions speak louder than words. See *State v. Rutter*, 252 Kan. 739, 746, 850 P.2d 899 (1993); *State ex rel. SRS v. Ketzel*, 47 Kan. App. 2d 536, Syl. ¶ 3, 275 P.3d 923 (2012). This is one of those times.

Had Rippetoe rebuffed the plea agreement, he would have been tried on the charges in all four of the cases. If convicted, he would have faced additional sentences in the cases that were dismissed as part of the agreement. He also would have risked some combination of consecutive sentences. And he almost certainly would not have gotten a

7

recommendation from the State for any sort of durational or dispositional departure. Probation would have been little more than a theoretical possibility.

The record demonstrates Rippetoe would have accepted the plea arrangement had he been fully advised of its sentencing ramifications before the plea hearing—assuming he had not actually been so informed. To reiterate, whatever his lawyer's advice, Rippetoe clearly knew those ramifications immediately after the district court sentenced him. But he protested only after his probation had been revoked months later. The timing of Rippetoe's complaint about his legal representation points to a ploy to avoid the consequences of his own wrongful conduct in squandering his probation rather than a genuine or cognizable request to have his fate decided in a jury room. Rippetoe, therefore, has not and cannot demonstrate prejudice satisfying the second part of the *Strickland* test. His 60-1507 motion fails for that reason. See *Adams*, 297 Kan. at 666 (denial of 60-1507 motion upheld on appeal where record fails to show defendant would have gone to trial rather than entering plea even if she had been adequately represented). So, for that reason, we affirm the district court.

Affirmed.